NO. 07-01-0160-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 19, 2002


______________________________



JOE REGINALD RANDLE
,




 Appellant

v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE COUNTY CRIMINAL COURT AT LAW NO. 4 OF HARRIS COUNTY;



NO. 102-4981; HON. JAMES E. ANDERSON, PRESIDING


_______________________________



Before BOYD, C.J., QUINN and REAVIS, JJ.

 Joe Reginald Randle (appellant) appeals his conviction for possession of
marihuana. Via seven issues, he complains that the trial court erred by 1) failing to strike
a juror for cause, 2) failing to suppress evidence found at his residence in violation of the
U.S. and Texas Constitutions and because the State failed to prove chain of custody, 3)
failing to suppress his oral statement which was obtained in violation of the U.S. and Texas
Constitutions, 4) failing to grant a mistrial after showing that the State had improper
contact with a juror, 5) failing to instruct a verdict based on illegally seized evidence and
6) entering judgment on a jury verdict when the record failed to show that the jury was
sworn. For reasons later stated, we affirm.

Background


 The record reflects that Harris County sheriff's deputies Huff and Tellez responded
to a "hang-up" 911 call wherein the dispatcher was unable to establish contact with the
residence from which the call was made. Upon arriving at that residence, Huff saw a pair
of women's shoes positioned in a manner leading the deputy to believe the wearer had
been drug out of them. Upon reaching the front door, both officers noted that the door was
ajar, and both began announcing their arrival. Soon, appellant came to the door, and the
officers instructed him to step out. Officer Tellez frisked him for weapons and asked
whether anyone else was in the house. While this conversation was taking place, Huff
heard a woman crying inside the house. Upon entering the abode, Huff discovered a
woman who appeared to be upset and crying. Based upon her experience, Huff kept the
woman separated from appellant while she ascertained what had taken place. While
talking with the woman in a bedroom, Huff recognized a substance on the dresser as
marihuana. When asked by Huff "what's this," the female indicated that it was not hers.

 Huff returned outside and advised Tellez about the marihuana. Tellez then asked
appellant to whom the marihuana belonged. Appellant responded that it was his and that
he had smoked some earlier. Appellant was then placed under arrest for possession. 

Issue One: Objectionable Juror


 In his first issue, appellant contends that "[t]he court erred by not disqualifying venire
person Erika Voegtli Manson for her expressions of inability to understand English." 
Specifically, Manson stated that she may "have a problem understanding all the
terminology in English because that's not [her] first language." During the defense's voir
dire, the question was asked whether anyone thought it was possible for the police to
embellish their reports. Manson needed to have the word "embellished" explained to her. 
After defense counsel defined the word, Manson answered the question in the negative. 
Upon conclusion of his voir dire, the following dialogue occurred at the bench:

 MR. HOWARD: [defense counsel] Judge, as part of my challenge, I would like
to also bring her and identify - -


 THE COURT: I didn't follow who her is for the record.

.

 MR. HOWARD: Juror No. 1. Her information form indicates that she was born
in Switzerland. During the State's voir dire, she had indicated
that English was not her first language and that she may have
difficulty understanding all of the proceedings. During the 
Defense's voir dire - -


 MS. PHILLIPS: If I could interrupt. I don't think that she said she would have 
difficulty understanding all the proceedings. She said some of 
the legal terminology.


 THE COURT: Right. The bottom line is that you're questioning the jurors'
ability to hear and comprehend the full trial - -


 MR. HOWARD: Yes. And to leave her on would prejudice my client and I
should not have to use a peremptory strike on her.


 THE COURT: We talked to her both by the State and the Defense and 
individually.


 State, what is your response?


 MS. PHILIPS: Your Honor, the State doesn't feel like it's going to be an unfair 
burden on the Defense attorney's client. The State feels like
she admitted that she may have some difficulty with some of
the legal terms, but would not have a problem letting
somebody know if she was having a difficult time with one of
the legal terms. 


 THE COURT: We talked to her and we have all adequately gotten responses
from her. She did flounder on the word embellish, but I will not 
strike Juror 1 as English not being the primary language. 
She's obviously an intelligent, working, well-rounded person
whose English, I think, has been very good so far. So, the
challenge on Juror No. 1 is denied so far.


 MR. HOWARD: Judge - -

 THE COURT: Your next challenge?

 MR. HOWARD: I'm trying to make a record on this in that during voir dire,
Judge, I did not at that point attempt to disqualify her for
English because I thought that it was the practice of this Court
to do challenges after voir dire. That we would bring them up
and then we could have a more intimate discussion into her
capacity to - - to do - - to understand outside the presence of
all of the other jurors.


 THE COURT: You got your ruling on that. On to the next challenge.

 MR. HOWARD: All right. Judge, that's the only challenge that I had.

 THE COURT: You saw a potential for it, too. I agree.

 State, any challenges for cause on the first six?


 MS. PHILLIPS: No, Judge.

 THE COURT: You've got three peremptory per side. See the Clerk.

After the jury was assembled, the Court asked if there were any objections, defense
counsel stated: "Judge, other than the one that I noted previously." No further objections
were made.

 In order to preserve a complaint such as that at bar, the complainant must
demonstrate that (1) he exhausted all of his peremptory challenges, (2) the trial court
denied his request for additional peremptory challenges, and (3) he was forced to accept
an objectionable juror due to the court's failure to grant a prior challenge for cause or grant
additional peremptory strikes. Coble v. State, 871 S.W.2d 192, 201 (Tex. Crim. App.
1993), cert. denied, 513 U.S. 829, 115 S. Ct. 101, 130 L. Ed.2d 50 (1994); Credille v.
State, 925 S.W.2d 112, 115 (Tex. App. - Houston [14th Dist.] 1996, pet. ref'd.). 
Furthermore, the complainant must not only identify the objectionable juror to the trial court
before the jury is sworn, Credille v. State, 925 S.W.2d at 115, but also illustrate why the
juror was objectionable. Cooks v. State, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992), 509
U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993). 

 In the case at bar, appellant failed to show that he had used all of his peremptory
strikes. Nor did he request additional strikes. Furthermore, appellant never identified to
the trial court any objectionable juror that he was forced to accept. Thus, the purported
error complained of was not properly preserved for our review. 

Issues Two and Three: Suppression of Evidence and Oral Statement


 In his second and third issues, appellant contends that the trial court erred by failing
to "suppress Marihuana found in appellant's residence" and "suppress inculpatory oral
statements obtained from appellant during custodial interrogation." Specifically, appellant
believes that because the officers arrived at his home with guns drawn and ordered him
out of his residence that he had been "seized and arrested" at that point in time. And,
because this purportedly was a warrantless arrest, article14.01 of the Texas Code of
Criminal Procedure governs the situation. Furthermore, appellant claims that none of the
exceptions described in Article 14.01 or any other statutes which permitted warrantless
arrests applied to the seizure of appellant. Moreover, because he was under arrest at the
time his utterances were made, the officers were obligated to Mirandize him. This they did
not do; therefore, any utterances he made were illegally obtained. We disagree.

 First, we must review a decision on a motion to suppress under an abuse of
discretion standard. LaSalle v. State, 923 S.W.2d 819, 823 (Tex. App. - Amarillo 1996,
pet. ref'd.). Although questions of law are subject to unfettered de novo review, the same
is not necessarily true with regard to mixed questions of law and fact. That is, the
application of law to fact is a mixed question of law and fact. Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997). Furthermore, when the resolution of the ultimate questions
turn on an evaluation of the credibility and demeanor of the witnesses, then we afford
almost total deference to the manner in which the trial court applied the law to facts before
it. The same deference is afforded the trial court's determination of the historical facts
involved. Id. In all other situations, we review de novo the manner in which the law is
applied. Id.

 Next, in reviewing seizures and detentions, we consider the fact that circumstances
short of probable cause to arrest may justify a temporary detention for the purpose of
investigation. Francis v. State, 896 S.W.2d 406, 409 (Tex. App. - Houston [14th Dist.]
1995, pet. ref'd.). To justify an investigative detention, the officer must have specific
articulable facts which, based on his experience and personal knowledge, and coupled with
logical inferences from those facts, warrant the intrusion. Joseph v. State, 865 S.W.2d
100, 102 (Tex. App. - Corpus Christi 1993, pet. ref'd.). 

 In addition to articulable facts, the officer's knowledge of the methods used and
characteristics exhibited by those involved in criminal activity, and the reaction, appearance
or demeanor of the individual being addressed are all factors that may be weighed when
determining the propriety of an investigative detention. Sheppard v. State, 895 S.W.2d
823, 825 (Tex. App. - Corpus Christi 1995, pet. ref'd.). Thus, officers may use such force
as is reasonably necessary to effect the goal of the stop. Morris v. State, 50 S.W.3d 89,
95 (Tex. App. - Fort Worth 2001, no pet. h.) 

 In the case before us, Officer Huff testified that: 1) they had been dispatched
pursuant to a "911 hang-up" call; 2) contact could not be made with the residence of origin
of the call; 3) upon arrival, the deputy observed a pair of female shoes in a position that
indicated that someone had been "drug out of them;" 4) the door was ajar or partly opened;
5) appellant came to the door and was told to come out; 6) even though drawn, the officers'
guns were held down to their sides; 7) the guns were holstered as soon as appellant
stepped out and Officer Tellez could search him for weapons; 8) she heard crying coming
from inside the house; 9) she observed a female who appeared to be upset and had puffy
eyes; and, 10) while investigating the circumstances surrounding the "911 hang-up" call
she observed what looked to be marihuana in plain view. 

 Officer Tellez testified that: 1) he responded to a 911call that he believed involved
family violence; 2) upon his arrival at the scene, the house was dark and the front door
ajar; 3) while approaching the front door, appellant walked out in an "angry manner;" 4) he
detained appellant at the door and, after frisking him for weapons, began investigating the
circumstances surrounding the "911 hang-up" call; 5) he remained outside with appellant
and made sure he would not go anywhere before the investigation was completed; 6) he
saw a crying female at the door; 7) he kept appellant separated from the female as part
of the procedure required in "disturbance" calls; and, 8) upon learning of Huff's discovery
of marihuana in the bedroom, he asked to whom it belonged to which appellant responded
that it was his and that he just smoked one joint earlier. Furthermore, Tellez testified that
up to the point of appellant's admission appellant was not under arrest and that he was
being detained for the safety of the officer as well as that of the complainant who called.

 Based on the foregoing evidence, we conclude that one could reasonably infer that
appellant was not under arrest when he made his statements regarding the marihuana. 
And, because he was not under arrest, the deputies were not obligated to Mirandize him. 
So too may one reasonably conclude that the marihuana was admissible as it had not
been obtained through an illegal seizure stemming from an unlawful arrest. Again, as
mentioned previously, appellant was not placed under arrest until after he stated that the
marihuana belonged to him. One may also reasonably conclude that the circumstances
justified entry into the abode for the purpose of investigating the safety of others via the
doctrine of emergency or exigent circumstances. See Torrez v. State, 34 S.W.3d 10, 15
(Tex. App. - Houston [14th Dist.] 2000, pet. ref'd.) (stating that officers may conduct a
warrantless search when there is reasonable cause to believe a person's health or safety
is threatened.). And, being legitimately within the abode, the officers were entitled to seize
contraband within plain view. See Walter v. State, 28 S.W.3d 538, 541 (Tex. Crim. App.
2000)(discussing the elements required for the "plain view" doctrine.) Accordingly, we
overrule issues two and three.

Issue Four: Chain of Custody


 In his fourth issue, appellant challenges the admission of the marihuana found in
his house because there was a "fatal flaw in the chain of custody." Appellant contends that
while Huff seized the marihuana and deposited it in the "police property room box," a
deputy who was not at the scene of the crime and who never handled the evidence brought
it to court. Furthermore, there were "no signatures [of the deputy] to indicate that he had
ever handled the evidence before it was brought to court." 

 Again, appellant contends that the marihuana was inadmissible. This is allegedly
so because the State did not prove the chain of custody between the time Huff initially
obtained possession of the drug from appellant's residence and the time Tellez picked it
up from the police station and brought it to court. However, Huff testified that she retrieved
the evidence from the crime scene and deposited it in the police property room lock box. 
Thereafter, Tellez testified that he retrieved the evidence from the police property room and
brought it to court. The county's forensic chemist then identified the State's exhibit as that
which was tested for marihuana. From this we see that the State established the beginning
and end of the chain of custody. Without evidence of tampering, questions involving gaps
in the chain of custody go to the weight of the evidence, not its admissibility. Lagrone v. 
State, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997), cert. denied, 522 U.S. 917, 118
S.Ct. 305, 139 L.Ed.2d 235 (1997); Durrett v. State, 36 S.W.3d 205, 208 (Tex. App. - -
Houston [14th Dist.] 2001, no pet.); Garner v. State, 939 S. W. 2d 802, 804-805 (Tex. 
App. - - Fort Worth 1997, pet. ref'd.). Thus, the marihuana was admissible, and, any
questions regarding the gaps merely affected the weight to be accorded the evidence by
the fact-finder. Lagrone v. State, supra; Durrett v. State, supra; Garner v. State, supra. 
This is especially so given the want of evidence suggesting that anyone tampered with the
substance once taken into custody by Huff. Accordingly we overrule appellant's fourth
issue.

Issue Five: Improper Jury Contact


 In his fifth issue, appellant complains that the trial court erred by failing to grant his
motion for mistrial. This was allegedly so because the prosecuting attorney and a witness
in the case (also an employee with the District Attorney's office) made contact with a juror,
Neal Goren (Goren). The contact occurred while Goren was having car trouble. The two
offered Goren the use of a cell phone to call for assistance. According to appellant, this
act "constituted an unsolicited favor" by the prosecuting attorney and the witness, which
created a favorable influence for the State. Moreover, appellant was "not afforded an
opportunity to render a comparable favor" to Goren or another juror.

 According to article 36.22 of the Texas Code of Criminal Procedure, "[n]o person
shall be permitted to converse with a juror about the case on trial except in the presence
and by the permission of the court." Tex. Code Crim. Proc. art. 36.22 (Vernon Supp.
2002). When a juror converses with an unauthorized person about the case, injury to the
accused is presumed, and a new trial may be warranted. Quinn v. State, 958 S.W.2d 395,
401 (Tex. Crim. App.1997) (citing Robinson v. State, 851 S.W.2d 216, 230 (Tex. Crim.
App. 1991). However, appellant has the burden of proving the allegation of juror
misconduct. Patrick v. State, 906 S.W.2d 481, 498 (Tex. Crim. App.1995),cert. denied,
517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). In the case at bar, the record
consisted of the trial court speaking with Goren regarding the aforementioned incident. 
The court asked Goren if the "contact cause[d] [him] to have any bias for or against either
side today?" To which Goren stated that it did not. Furthermore upon defense counsel's
questioning, the trial court was told that Goren's battery had died and that the prosecutors
offered the use of a phone. Furthermore, once Goren was recognized as a juror involved
in the case, they instructed him that they could not talk to him and left. Thus it is clear from
the record that no discussion of the case occurred. Therefore, we overrule this issue.

Issue Six: Instructed Verdict


 Appellant, via his sixth issue, contends the trial court should have granted him an
instructed verdict because the marihuana was illegally seized, his oral statements were
illegally obtained, and the chain of custody was insufficiently established. In effect, he
renewed the same objections to the evidence previously urged. However, by our resolution
of appellant's issues two, three, and four, we determined that the evidence was admissible. 
So, the trial court did not err in refusing to grant an instructed verdict. Accordingly, the sixth
issue is overruled.

Issue Seven: Unsworn Jury


 Finally, appellant claims that the trial court erred in rendering judgment on the jury's
verdict because the "record does not contain the oath language required by" article 35.22
of the Texas Code of Criminal Procedure. Because the record fails to show that the oath
was administered, then the verdict is allegedly "null and void." And, because the jury's
verdict is supposedly void, the judgement is void as well. 

 We note that the record reflects that the trial court uttered the following: "Jurors, first
thing, please, stand for me and raise your right hand. This is your oath as a jury." The
statement is followed by the following notation: "(The jury was sworn.)" It is apparent, from
the record, that the jury received the oath required by law to be given a jury. Thus, we
overrule his seventh issue.

 Accordingly, we affirm the judgment.

 Per Curiam 

 

Do not publish.

 



ont-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:Arial;
 mso-bidi-font-weight:normal;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-font-weight:normal;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:Arial;
 mso-bidi-font-weight:normal;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:Arial;
 mso-bidi-font-weight:normal;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:12.0pt;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Shruti;
 mso-bidi-font-weight:bold;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:12.0pt;
 text-align:justify;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0217-CR%20%20Opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0217-CR%20%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0217-CR%20%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0217-CR%20%20Opinion_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-even-header:url("07-09-0217-CR%20%20Opinion_files/header.htm") eh1;
 mso-header:url("07-09-0217-CR%20%20Opinion_files/header.htm") h1;
 mso-even-footer:url("07-09-0217-CR%20%20Opinion_files/header.htm") ef1;
 mso-footer:url("07-09-0217-CR%20%20Opinion_files/header.htm") f1;
 mso-first-header:url("07-09-0217-CR%20%20Opinion_files/header.htm") fh1;
 mso-first-footer:url("07-09-0217-CR%20%20Opinion_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
-->








NO. 07-09-0217-CR

 

IN THE COURT OF APPEALS

 

FOR THE SEVENTH DISTRICT OF TEXAS

 

AT AMARILLO

 

PANEL A

 

MARCH 9, 2010

 

______________________________

 

 

RANDY WAYNE COOK, APPELLANT

 

V.

 

THE STATE OF TEXAS, APPELLEE

 

_________________________________

 

FROM THE 181ST DISTRICT COURT OF  RANDALL COUNTY;

 

NO. 14972-B; HONORABLE JOHN BOARD, JUDGE

 

_______________________________

 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

ABATEMENT AND REMAND

            Following a plea of not
guilty, Appellant, Randy Wayne Cook, was convicted by a jury of aggravated
sexual assault of a child and sentenced to life imprisonment.  The appellate record, Appellant's brief, and
State's brief have all been filed. 
Pending before this Court is a Motion to Abate Appeal in which appointed
counsel, Warren L. Clark, represents that he has accepted a position with the
Randall County Criminal District Attorney's Office effective April 1, 2010, and
finds it necessary to withdraw from any further representation of
Appellant.  For the following reasons, we
agree and grant the motion.

            The trial court has the
responsibility for appointing counsel to represent indigent defendants, Tex.
Code Crim. Proc. Ann. art. 1.051(d) (Vernon Supp. 2009), as well as the
authority to relieve or replace appointed counsel upon a finding of good cause.  Tex. Code Crim. Proc. Ann.
art. 26.04(j)(2) (Vernon Supp. 2009).  See
also Enriquez v. State, 999  S.W.2d 906, 907 (Tex.App.--Waco
1999, no pet.).  Additionally, the trial
court retains authority to appoint or substitute counsel even after the
appellate record has been filed.  Enriquez, 999 S.W.2d
at 908.  

Mr. Clark was appointed by the trial court to represent
Appellant.  In light of Mr. Clark's
upcoming employment with the Randall County Criminal District Attorney's
Office, we now abate the appeal and remand the cause to the trial court for
further proceedings.[1]

Upon remand, the trial court shall utilize whatever means
necessary to determine the following:

1.  whether good cause
exists to relieve Mr. Clark of his duties;

2.  whether Appellant
still desires to prosecute this appeal; and

2.  whether Appellant is
indigent and entitled to appointed counsel.

 

Should it be determined that Appellant does want to continue
the appeal and the trial court determines he is entitled to new appointed
counsel, the name, address, telephone number, and state bar number of the
newly-appointed counsel shall be provided to the Clerk of this Court.  The trial court shall execute findings of
fact and conclusions of law, and shall cause its findings, conclusions, and any
necessary orders to be included in a supplemental clerk's record to be filed with
the Clerk of this Court by April 1, 2010. 


            Should new counsel be
appointed, the Clerk of this Court is instructed to accept and file any brief
or supplemental brief newly appointed counsel desires to file.  Absent a motion for extension of time, newly
appointed counsel's brief is due within thirty days following the filing of the
supplemental clerk's record, and the State's brief is due thirty days following
the filing of Appellant's brief. 

It is so ordered.

                                                                                    Per
Curiam

 

 

 

Do not publish.

 

 

 

 











[1]Notwithstanding
that the record and briefs have been filed, an appellant is entitled to
appointed counsel "through to the end."  Ex parte Riley, 193 S.W.3d 900, 901 (Tex.Crim.App.
2006).  Following a disposition by
this Court, appointed counsel has the duty to inform the client of this Court's
decision and advise him of the right to file a pro se petition for
discretionary review.  Id. at 902.