NO. 07-01-0160-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 19, 2002
_____

JOE REGINALD RANDLE,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE COUNTY CRIMINAL COURT AT LAW NO. 4 OF HARRIS COUNTY;

NO. 102-4981; HON. JAMES E. ANDERSON, PRESIDING
_____

Before BOYD, C.J., QUINN and REAVIS, JJ.

Joe Reginald Randle (appellant) appeals his conviction for possession of marihuana. Via seven issues, he complains that the trial court erred by 1) failing to strike a juror for cause, 2) failing to suppress evidence found at his residence in violation of the U.S. and Texas Constitutions and because the State failed to prove chain of custody, 3) failing to suppress his oral statement which was obtained in violation of the U.S. and Texas Constitutions, 4) failing to grant a mistrial after showing that the State had improper contact with a juror, 5) failing to instruct a verdict based on illegally seized evidence and 6) entering judgment on a jury verdict when the record failed to show that the jury was sworn. For reasons later stated, we affirm.

## *Background*

The record reflects that Harris County sheriff's deputies Huff and Tellez responded to a "hang-up" 911 call wherein the dispatcher was unable to establish contact with the residence from which the call was made. Upon arriving at that residence, Huff saw a pair of women's shoes positioned in a manner leading the deputy to believe the wearer had been drug out of them. Upon reaching the front door, both officers noted that the door was ajar, and both began announcing their arrival. Soon, appellant came to the door, and the officers instructed him to step out. Officer Tellez frisked him for weapons and asked whether anyone else was in the house. While this conversation was taking place, Huff heard a woman crying inside the house. Upon entering the abode, Huff discovered a woman who appeared to be upset and crying. Based upon her experience, Huff kept the woman separated from appellant while she ascertained what had taken place. While talking with the woman in a bedroom, Huff recognized a substance on the dresser as marihuana. When asked by Huff "what's this," the female indicated that it was not hers.

Huff returned outside and advised Tellez about the marihuana. Tellez then asked appellant to whom the marihuana belonged. Appellant responded that it was his and that he had smoked some earlier. Appellant was then placed under arrest for possession.

## *Issue One: Objectionable Juror*

In his first issue, appellant contends that "[t]he court erred by not disqualifying venire person Erika Voegtli Manson for her expressions of inability to understand English." Specifically, Manson stated that she may "have a problem understanding all the terminology in English because that's not [her] first language." During the defense's voir dire, the question was asked whether anyone thought it was possible for the police to

2

embellish their reports. Manson needed to have the word "embellished" explained to her.

After defense counsel defined the word, Manson answered the question in the negative.

Upon conclusion of his voir dire, the following dialogue occurred at the bench:

MR. HOWARD: [defense counsel] Judge, as part of my challenge, I would like to also bring her and identify - -

THE COURT: I didn't follow who her is for the record.

MR. HOWARD: Juror No. 1. Her information form indicates that she was born in Switzerland. During the State's voir dire, she had indicated that English was not her first language and that she may have difficulty understanding all of the proceedings. During the Defense's voir dire - -

MS. PHILLIPS: If I could interrupt. I don't think that she said she would have difficulty understanding all the proceedings. She said some of the legal terminology.

THE COURT: Right. The bottom line is that you're questioning the jurors' ability to hear and comprehend the full trial - -

MR. HOWARD: Yes. And to leave her on would prejudice my client and I should not have to use a peremptory strike on her.

THE COURT: We talked to her both by the State and the Defense and individually.

State, what is your response?

MS. PHILIPS: Your Honor, the State doesn't feel like it's going to be an unfair burden on the Defense attorney's client. The State feels like she admitted that she may have some difficulty with some of the legal terms, but would not have a problem letting somebody know if she was having a difficult time with one of the legal terms.

THE COURT: We talked to her and we have all adequately gotten responses from her. She did flounder on the word embellish, but I will not strike Juror 1 as English not being the primary language. She's obviously an intelligent, working, well-rounded person whose English, I think, has been very good so far. So, the challenge on Juror No. 1 is denied so far.

3

MR. HOWARD:       Judge - -

THE COURT:       Your next challenge?

MR. HOWARD:       I'm trying to make a record on this in that during voir dire, Judge, I did not at that point attempt to disqualify her for English because I thought that it was the practice of this Court to do challenges after voir dire.  That we would bring them up and then we could have a more intimate discussion into her capacity to - - to do - - to understand outside the presence of all of the other jurors.

THE COURT:       You got your ruling on that.  On to the next challenge.

MR. HOWARD:       All right.  Judge, that's the only challenge that I had.

THE COURT:       You saw a potential for it, too.  I agree.
State, any challenges for cause on the first six?

MS. PHILLIPS:     No, Judge.

THE COURT:       You've got three peremptory per side.  See the Clerk.

After the jury was assembled, the Court asked if there were any objections, defense counsel stated: "Judge, other than the one that I noted previously."  No further objections were made.

In order to preserve a complaint such as that at bar, the complainant must demonstrate that (1) he exhausted all of his peremptory challenges, (2) the trial court denied his request for additional peremptory challenges, and (3) he was forced to accept an objectionable juror due to the court's failure to grant a prior challenge for cause or grant additional peremptory strikes.  *Coble v. State,* 871 S.W.2d 192, 201 (Tex. Crim. App. 1993), *cert. denied*, 513 U.S. 829, 115 S. Ct. 101, 130 L. Ed.2d 50 (1994); *Credille v. State*, 925 S.W.2d 112, 115 (Tex. App. – Houston [14th Dist.] 1996, pet. ref'd.).  Furthermore, the complainant must not only identify the objectionable juror to the trial court

4

before the jury is sworn, *Credille v. State*, 925 S.W.2d at 115, but also illustrate why the juror was objectionable. *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992), 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).

In the case at bar, appellant failed to show that he had used all of his peremptory strikes. Nor did he request additional strikes. Furthermore, appellant never identified to the trial court any objectionable juror that he was forced to accept. Thus, the purported error complained of was not properly preserved for our review.

*Issues Two and Three: Suppression of Evidence and Oral Statement*

In his second and third issues, appellant contends that the trial court erred by failing to "suppress Marihuana found in appellant's residence" and "suppress inculpatory oral statements obtained from appellant during custodial interrogation." Specifically, appellant believes that because the officers arrived at his home with guns drawn and ordered him out of his residence that he had been "seized and arrested" at that point in time. And, because this purportedly was a warrantless arrest, article 14.01 of the Texas Code of Criminal Procedure governs the situation. Furthermore, appellant claims that none of the exceptions described in Article 14.01 or any other statutes which permitted warrantless arrests applied to the seizure of appellant. Moreover, because he was under arrest at the time his utterances were made, the officers were obligated to Mirandize him. This they did not do; therefore, any utterances he made were illegally obtained. We disagree.

First, we must review a decision on a motion to suppress under an abuse of discretion standard. *LaSalle v. State*, 923 S.W.2d 819, 823 (Tex. App. – Amarillo 1996, pet. ref'd.). Although questions of law are subject to unfettered *de novo* review, the same is not necessarily true with regard to mixed questions of law and fact. That is, the

5

application of law to fact is a mixed question of law and fact. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Furthermore, when the resolution of the ultimate questions turn on an evaluation of the credibility and demeanor of the witnesses, then we afford almost total deference to the manner in which the trial court applied the law to facts before it. The same deference is afforded the trial court's determination of the historical facts involved. *Id*. In all other situations, we review *de novo* the manner in which the law is applied. *Id.*

Next, in reviewing seizures and detentions, we consider the fact that circumstances short of probable cause to arrest may justify a temporary detention for the purpose of investigation. *Francis v. State*, 896 S.W.2d 406, 409 (Tex. App. – Houston [14ᵗʰ Dist.] 1995, pet. ref'd.). To justify an investigative detention, the officer must have specific articulable facts which, based on his experience and personal knowledge, and coupled with logical inferences from those facts, warrant the intrusion. *Joseph v. State*, 865 S.W.2d 100, 102 (Tex. App. – Corpus Christi 1993, pet. ref'd.).

In addition to articulable facts, the officer's knowledge of the methods used and characteristics exhibited by those involved in criminal activity, and the reaction, appearance or demeanor of the individual being addressed are all factors that may be weighed when determining the propriety of an investigative detention. *Sheppard v. State*, 895 S.W.2d 823, 825 (Tex. App. – Corpus Christi 1995, pet. ref'd.). Thus, officers may use such force as is reasonably necessary to effect the goal of the stop. *Morris v. State*, 50 S.W.3d 89, 95 (Tex. App. – Fort Worth 2001, no pet. h.)

In the case before us, Officer Huff testified that: 1) they had been dispatched pursuant to a "911 hang-up" call; 2) contact could not be made with the residence of origin

of the call; 3) upon arrival, the deputy observed a pair of female shoes in a position that indicated that someone had been "drug out of them;" 4) the door was ajar or partly opened; 5) appellant came to the door and was told to come out; 6) even though drawn, the officers' guns were held down to their sides; 7) the guns were holstered as soon as appellant stepped out and Officer Tellez could search him for weapons; 8) she heard crying coming from inside the house; 9) she observed a female who appeared to be upset and had puffy eyes; and, 10) while investigating the circumstances surrounding the "911 hang-up" call she observed what looked to be marihuana in plain view.

Officer Tellez testified that: 1) he responded to a 911 call that he believed involved family violence; 2) upon his arrival at the scene, the house was dark and the front door ajar; 3) while approaching the front door, appellant walked out in an "angry manner;" 4) he detained appellant at the door and, after frisking him for weapons, began investigating the circumstances surrounding the "911 hang-up" call; 5) he remained outside with appellant and made sure he would not go anywhere before the investigation was completed; 6) he saw a crying female at the door; 7) he kept appellant separated from the female as part of the procedure required in "disturbance" calls; and, 8) upon learning of Huff's discovery of marihuana in the bedroom, he asked to whom it belonged to which appellant responded that it was his and that he just smoked one joint earlier. Furthermore, Tellez testified that up to the point of appellant's admission appellant was not under arrest and that he was being detained for the safety of the officer as well as that of the complainant who called.

Based on the foregoing evidence, we conclude that one could reasonably infer that appellant was not under arrest when he made his statements regarding the marihuana. And, because he was not under arrest, the deputies were not obligated to Mirandize him.

7

So too may one reasonably conclude that the marihuana was admissible as it had not been obtained through an illegal seizure stemming from an unlawful arrest. Again, as mentioned previously, appellant was not placed under arrest until after he stated that the marihuana belonged to him. One may also reasonably conclude that the circumstances justified entry into the abode for the purpose of investigating the safety of others via the doctrine of emergency or exigent circumstances. *See Torrez v. State*, 34 S.W.3d 10, 15 (Tex. App. – Houston [14th Dist.] 2000, pet. ref'd.) (stating that officers may conduct a warrantless search when there is reasonable cause to believe a person's health or safety is threatened.). And, being legitimately within the abode, the officers were entitled to seize contraband within plain view. *See Walter v. State,* 28 S.W.3d 538, 541 (Tex. Crim. App. 2000)(discussing the elements required for the "plain view" doctrine.) Accordingly, we overrule issues two and three.

### Issue Four: Chain of Custody

In his fourth issue, appellant challenges the admission of the marihuana found in his house because there was a "fatal flaw in the chain of custody." Appellant contends that while Huff seized the marihuana and deposited it in the "police property room box," a deputy who was not at the scene of the crime and who never handled the evidence brought it to court. Furthermore, there were "no signatures [of the deputy] to indicate that he had ever handled the evidence before it was brought to court."

Again, appellant contends that the marihuana was inadmissible. This is allegedly so because the State did not prove the chain of custody between the time Huff initially obtained possession of the drug from appellant's residence and the time Tellez picked it up from the police station and brought it to court. However, Huff testified that she retrieved

8

the evidence from the crime scene and deposited it in the police property room lock box. Thereafter, Tellez testified that he retrieved the evidence from the police property room and brought it to court. The county's forensic chemist then identified the State's exhibit as that which was tested for marihuana. From this we see that the State established the beginning and end of the chain of custody. Without evidence of tampering, questions involving gaps in the chain of custody go to the weight of the evidence, not its admissibility. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997), *cert. denied*, 522 U.S. 917, 118 S.Ct. 305, 139 L.Ed.2d 235 (1997); *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App. - - Houston [14th Dist.] 2001, no pet.); *Garner v. State,* 939 S. W. 2d 802, 804-805 (Tex. App. - - Fort Worth 1997, pet. ref'd.). Thus, the marihuana was admissible, and, any questions regarding the gaps merely affected the weight to be accorded the evidence by the fact-finder. *Lagrone v. State, supra; Durrett v. State, supra; Garner v. State, supra*. This is especially so given the want of evidence suggesting that anyone tampered with the substance once taken into custody by Huff. Accordingly we overrule appellant's fourth issue.

*Issue Five: Improper Jury Contact*

In his fifth issue, appellant complains that the trial court erred by failing to grant his motion for mistrial. This was allegedly so because the prosecuting attorney and a witness in the case (also an employee with the District Attorney's office) made contact with a juror, Neal Goren (Goren). The contact occurred while Goren was having car trouble. The two offered Goren the use of a cell phone to call for assistance. According to appellant, this act "constituted an unsolicited favor" by the prosecuting attorney and the witness, which

9

created a favorable influence for the State. Moreover, appellant was "not afforded an opportunity to render a comparable favor" to Goren or another juror.

According to article 36.22 of the Texas Code of Criminal Procedure, "[n]o person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." TEX. CODE CRIM. PROC. art. 36.22 (Vernon Supp. 2002). When a juror converses with an unauthorized person about the case, injury to the accused is presumed, and a new trial may be warranted. *Quinn v. State*, 958 S.W.2d 395, 401 (Tex. Crim. App.1997) (citing *Robinson v. State,* 851 S.W.2d 216, 230 (Tex. Crim. App. 1991). However, appellant has the burden of proving the allegation of juror misconduct. *Patrick v. State,* 906 S.W.2d 481, 498 (Tex. Crim. App.1995),*cert. denied*, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). In the case at bar, the record consisted of the trial court speaking with Goren regarding the aforementioned incident. The court asked Goren if the "contact cause[d] [him] to have any bias for or against either side today?" To which Goren stated that it did not. Furthermore upon defense counsel's questioning, the trial court was told that Goren's battery had died and that the prosecutors offered the use of a phone. Furthermore, once Goren was recognized as a juror involved in the case, they instructed him that they could not talk to him and left. Thus it is clear from the record that no discussion of the case occurred. Therefore, we overrule this issue.

*Issue Six: Instructed Verdict*

Appellant, via his sixth issue, contends the trial court should have granted him an instructed verdict because the marihuana was illegally seized, his oral statements were illegally obtained, and the chain of custody was insufficiently established. In effect, he renewed the same objections to the evidence previously urged. However, by our resolution

10

of appellant's issues two, three, and four, we determined that the evidence was admissible. So, the trial court did not err in refusing to grant an instructed verdict. Accordingly, the sixth issue is overruled.

*Issue Seven: Unsworn Jury*

Finally, appellant claims that the trial court erred in rendering judgment on the jury's verdict because the "record does not contain the oath language required by" article 35.22 of the Texas Code of Criminal Procedure. Because the record fails to show that the oath was administered, then the verdict is allegedly "null and void." And, because the jury's verdict is supposedly void, the judgement is void as well.

We note that the record reflects that the trial court uttered the following: "Jurors, first thing, please, stand for me and raise your right hand. This is your oath as a jury." The statement is followed by the following notation: "(The jury was sworn.)" It is apparent, from the record, that the jury received the oath required by law to be given a jury. Thus, we overrule his seventh issue.

Accordingly, we affirm the judgment.

Per Curiam

Do not publish.

11