Affirmed and Memorandum Opinion filed September 23, 2004









Affirmed and Memorandum Opinion filed September 23,
2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00636-CR

____________

 

CLARENCE JAMISON
HUGHES,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 185th
District Court

Harris County, Texas

Trial Court Cause No. 916,092

 



 

M E M O R A N D U M   O P I N I O N

Appellant was convicted of aggravated
robbery and sentenced to forty years= confinement in
the Institutional Division of the Texas Department of Criminal Justice.  In four issues, he contends (1) the evidence
is insufficient to corroborate the accomplice witness testimony, (2) the trial
court erred in permitting evidence that a co-defendant named appellant as one
of the robbers, (3) he was denied effective assistance of counsel, and (4) the
trial court erred in allowing the jury to hear testimony about a lineup at
which appellant=s lawyer was not present.  We affirm.








 

I.  Factual Background

At approximately 6:30 p.m. on June 4,
2002, Donald Harvey picked up Christopher Gaskin in his car.  The two drove around while Harvey sold
drugs.  Harvey and Gaskin later decided
to go to a men=s club and invited their friend, Billy Ray
Simmons, to come with them.  Simmons
drove in his car to appellant=s house so
appellant could join them.  Harvey and
Gaskin were in Harvey=s car, and Simmons and appellant were in
Simmons=s car.  On the way to the men=s club, Harvey
purchased a portable two-way radio (walkie-talkie) that could be used to
communicate with Simmons, who had a similar radio.  After discovering that the men=s club was closed
for remodeling, one of the men saw a car leaving an automated teller machine
(ATM) in a bank parking lot, and both cars followed the vehicle to the driver=s home.

In the meantime, Roger Fulghum, the
complainant, was at home in bed.  Shortly
after midnight on June 5, 2002, his wife woke with a severe headache.  The complainant=s wife drove
herself to a nearby clinic, where the doctor recommended she go to the
hospital.  When the complainant learned
his wife would be going to the hospital, he called his sister-in-law to stay
with his two young children and joined his wife at the hospital.  At the hospital, the complainant learned his
wife would be admitted, so he drove home to inform his sister-in-law and
arrange care for his children.  Because
his wife was being admitted, the complainant took her purse with him.  On his way home, at approximately 4:00 in the
morning, the complainant stopped at an ATM and withdrew one hundred
dollars.  It was the complainant that
appellant and the three other men followed from the bank parking lot.








The complainant drove home and parked his
car in the garage.  After parking his
car, he noticed two other cars in the street in addition to his sister-in-law=s car.  As he was looking at the cars, a man carrying
a shotgun said ADon=t move@ and ran toward
the complainant.  The complainant ran
toward his house hoping to get inside but then decided he did not want to risk
the man following him into the house.  In
an attempt to show he was not a threat, the complainant placed the contents of
his pockets and his wife=s purse on the ground and then laid
down.  The man with the shotgun then
placed his hand on the complainant=s back and asked
how much money was in the wallet and who was in the house.  The complainant responded that the wallet
contained one hundred dollars and his children and sister-in-law were in the
house.  The man then said, ALet=s get in the car.@

The complainant unlocked the driver=s door and stepped
into his car.  As he got into the car,
the complainant saw another man with a handgun coming toward him.  The complainant described the man with the
handgun as a black man with a light complexion, slim build, and frizzy
hair.  He also said the man was wearing a
green and blue shirt and had a black bandana around his nose and mouth.  The complainant then got in his car, locked
the doors, and started to back down the driveway.  After one of the other men moved one of the
cars to block the driveway, the complainant drove across his lawn in an attempt
to escape.  As he drove, the man with the
shotgun shot into the passenger side window and hit the complainant in the
arm.  After he was certain the men had
driven away, the complainant went inside his house where his sister-in-law
called the police and an ambulance.

Several days later, Harvey was stopped by
a Houston police officer on a routine traffic stop.  Harvey was in possession of the complainant=s credit
cards.  Harvey gave a statement in which
he implicated Gaskin, Simmons, and appellant in the robbery.  Gaskin was subsequently arrested and gave a
statement to the police identifying Harvey as the man with the shotgun and
appellant as the one with the handgun. 
An arrest warrant was issued for appellant.  When the police attempted to arrest
appellant, he led them on a high speed chase, running several stop signs.  Following a lineup, the complainant
tentatively identified appellant as the robber who carried the handgun.








At trial, Gaskin and Simmons testified
that along with Harvey and appellant, they committed the robbery against the
complainant.  Gaskin testified that he
and Harvey were driving in the same car and that Harvey used a shotgun in the
robbery.  Gaskin also testified that it
was appellant who had used the handgun. 
According to Gaskin, Harvey attempted to get into the passenger side
door as the complainant was driving away, and when he discovered the door was
locked, Harvey shot into the car through the passenger window.  Gaskin confirmed that on the night of the
robbery, appellant was wearing jeans and a green and blue shirt.  Simmons also admitted driving one of the cars
during the robbery.  He and appellant
were in the same vehicle.  Simmons
testified that when they arrived at the complainant=s house, Harvey
got out of his car carrying a shotgun and appellant got out of the other car
with a handgun.

II. 
Sufficiency of the Evidence

In his fourth issue, appellant contends the
evidence is insufficient as a matter of law to corroborate the accomplice
witness testimony.  Under article 38.14
of the Code of Criminal Procedure, a conviction cannot be based on accomplice
testimony unless it is corroborated by other evidence tending to connect the
defendant with the offense.  Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 1979); Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App.
2002).  The evidence is
insufficient if it proves merely the commission of the offense.  Cathey v. State, 992 S.W.2d 460, 462
(Tex. Crim. App. 1999).  However, the
corroborating evidence need not connect the defendant directly to the crime or
be sufficient by itself to establish guilt; it need only tend to connect the defendant
to the offense.  Vasquez, 67 S.W.3d
at 236; Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001).  If the combined weight of all the
non-accomplice evidence tends to connect the defendant to the offense, the
requirement of article 38.14 has been fulfilled.  Cathey, 992 S.W.2d at 462.  In reviewing this point, we must eliminate
the accomplice testimony from consideration and then examine the testimony of
other witnesses to ascertain if there is any inculpatory evidence that tends to
connect the accused with the commission of the offense.  Solomon, 49 S.W.3d at 361.








The complainant testified that he was
attacked first by a man carrying a shotgun. 
As he stepped into his car, the complainant saw another man coming
toward him with a handgun.  The second
man had a light complexion, frizzy hair, and wore a green and blue shirt.  The complainant tentatively identified
appellant in a lineup.  A witness=s identification,
even if less than positive, is sufficient to corroborate an accomplice=s testimony.  Valenciano v. State, 511 S.W.2d 297,
299B300 (Tex. Crim.
App. 1974); Torres v. State, 632 S.W.2d 844, 845 (Tex. App.CHouston [14th
Dist.] 1982, no pet.).  Here, the
complainant identified appellant in a lineup, then identified appellant at
trial as the man he had identified in the lineup.  The complainant accurately described
appellant=s appearance, and the complainant=s description of
the robbery matches the co-defendants= descriptions of
the events.  This evidence sufficiently
tends to connect appellant to the crime.

In addition, when the police attempted to
arrest appellant, he led them on a high speed chase through his neighborhood,
ignoring police indications to pull over, and running several stop signs before
eventually stopping and surrendering. 
The Texas Court of Criminal Appeals has found A[e]vidence of
flight and guilty demeanor, coupled with other corroborating circumstances, may
tend to connect a defendant with the crime.@ Hernandez v.
State, 939  S.W.2d 173, 178
(Tex. Crim. App. 1997).  Accordingly,
appellant=s flight from the police further
corroborates the accomplice testimony of Gaskin and Simmons.  Issue four is overruled.

III.  Confrontation and Hearsay

In his first issue, appellant contends the
trial court erred in permitting the State to elicit testimony that Harvey gave
a statement naming appellant as one of the shooters because Harvey did not
testify at trial.  Prior to trial,
appellant filed a motion in limine requesting the State refrain from mentioning
statements of the co-conspirators until the admissibility of their statements
could be determined.  At trial, appellant
objected to the State=s use of Harvey=s statement.  During Gaskin=s testimony, the
State asked:

Q. 
Did DonaldCdid you see Donald or hear Donald
Harvey say who the other gunman was?

A.  Hughes








Q.  Okay. 
So, Donald HarveyCwho=s your girlfriend=s brother, right?

A.  Yes, sir.

Q.  Csays that Clarence Hughes was the gunman?

 

[Defense counsel]:  Objection, asked and answered.

 

THE COURT:  Sustained.

 

Q. 
How many gunmen did Donald Harvey say there were?

A.  Two.

Q.  Who did he say those two gunmen were?

 

[Defense counsel]:  Objection, asked and answered.

 

* * * * * 

 

THE COURT:  Your objection is sustained.

 

The above testimony reflects that appellant failed to
object to the State=s first reference to Harvey=s statement and
then objected to the State=s questions as
being redundant.  Each of appellant=s objections were
sustained.  

Appellant also complains of the following testimony by
Gaskin:

 

Q.  Mr. Gaskin, when you talked to the police on
June the 10th when you were arrested, I believe you indicated that you were
just shownCbecause initially you denied any
involvement, correct?

A.  Right.

Q.  Once they showed you that portion of Donald
Harvey=s interviewCand it was a[n] interview on
videotape, right?

A. 
Right.

Q. 
Cyou were able to see Donald Harvey,
correct?

A. 
Right.

Q. 
When they played the portion where he identified you and Clarence Hughes
as the gunmen, did Donald Harvey say which gun you had?

 

[Defense counsel]:  Objection, hearsay.

 

A. 
No, sir.

 








THE COURT:  Sustained.

 

Q. 
He identified you and Clarence Hughes as the gunmen, correct?

A. 
Yes, sir.

Q. 
Is it your understanding that Simmons identified the defendant as one of
the gunmen as well?

 

[Defense counsel]:  Objection, hearsay.

 

A. 
Yes, sir.

 

THE COURT: 
Sustained.     

A.  Confrontation Clause

Appellant contends the trial court erred in denying his
Sixth Amendment right to confront his accusers. 
The Sixth Amendment provides, in pertinent part, that in Aall criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him.@ 
Although the Rules of Evidence permit exceptions to the normal
prohibition against hearsay evidence, these exceptions do not apply to evidence
that is testimonial in nature.  The
Constitution does not permit the admission of a testimonial statement of a
witness who did not appear at trial unless he was unavailable to testify and the
defendant had a prior opportunity for cross‑examination.  Crawford v. Washington, 124 S. Ct.
1354, 1365 (2004).  Harvey=s videotaped
statement, given to police after he had become a suspect, was testimonial in
nature.  Id. at 1374. 

Appellant, however, made no objection to Gaskin=s testimony based
on a violation of the confrontation clause. 
To preserve error, there must be a timely, specific objection to the
complained‑of testimony.  See
Tex. R. App. P. 33.1.  Even constitutional error may be waived by
failure to object at trial.  See
Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).  A defendant waives his constitutional right
to confront witnesses if he does not object at trial.  See Holland v. State, 802 S.W.2d 696,
700 (Tex. Crim. App. 1991); Thacker v. State, 999 S.W.2d 56, 61 (Tex.
App.CHouston [14th
Dist.] 1999, pet. ref=d).








Although appellant objected on the basis of hearsay to some
of the prosecutor=s questions, a hearsay objection does not
preserve error on a confrontation claim. 
See Saldivar v. State, 980 S.W.2d 475, 496 (Tex. App.CHouston [14th
Dist.] 1998, pet. ref=d). Hearsay objections and objections to
violations of the constitutional right to confront witnesses are neither
synonymous nor necessarily coextensive.  Holland,
802 S.W.2d at 700; Thacker, 999 S.W.2d at 61.  Further, to the extent appellant=s motion in limine
raised the admissibility of the evidence based on the confrontation clause,
such a motion cannot preserve error for appellate review.  See Geuder v. State, 115 S.W.3d 11, 14
(Tex. Crim. App. 2003).  Because
appellant=s issue on appeal does not comport with
his trial objection, he has waived error with regard to the confrontation
clause of the Sixth Amendment.  See
Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995).

B.  Hearsay

Appellant also alleges the testimony set forth above
constitutes impermissible hearsay. However, each time Harvey=s accusation of
appellant as the gunman was mentioned, appellant either failed to object or
appellant objected and his objection was sustained.  After the trial court sustained appellant=s objection, he
failed to pursue an adverse ruling.  When
an objection is sustained, a party must pursue his objection to an adverse
ruling; otherwise he waives error.  Credille
v. State, 925 S.W.2d 112, 115 (Tex. App.CHouston [14th
Dist.] 1996, pet. ref=d). 
Further, to preserve error, appellant must object each time
inadmissible evidence is offered.  Martinez
v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003).  Therefore, appellant failed to preserve error
with regard to hearsay.  Appellant=s first issue is
overruled.

IV.  Ineffective Assistance of Counsel

In appellant=s second issue, he
contends his counsel was ineffective in (1) failing to object to hearsay
statements concerning Harvey=s out-of-court
statement, (2) failing to object to hearsay statements referred to in the
prosecutor=s opening statement, and (3) failing to
object to testimony that appellant invoked his right to counsel instead of
giving a statement to the police.








Both the United States and Texas Constitutions guarantee an
accused the right to assistance of counsel. U.S. Const. amend. VI; Tex.
Const. art. I, ' 10; Tex.
Code Crim. Proc. Ann. art. 1.051 (Vernon Supp. 2004).  This right necessarily includes the right to
reasonably effective assistance of counsel. 
Strickland v. Washington, 466 U.S. 668, 686 (1984); Ex parte
Gonzales, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective
assistance of counsel, appellant must show that (1) trial counsel=s representation
fell below an objective standard of reasonableness, based on prevailing
professional norms, and (2) there is a reasonable probability that the result
of the proceeding would have been different but for trial counsel=s deficient
performance.  Strickland, 466 U.S.
at 688B96. 

In assessing appellant=s claims, there is
a strong presumption that trial counsel was competent.  Thompson v. State, 9 S.W.3d 808, 813
(Tex. Crim. App. 1999).  We presume
counsel=s actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  See Jackson v. State,
877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Appellant has the burden to rebut this presumption by presenting
evidence illustrating why trial counsel did what he or she did.  See id.  An appellant cannot meet this burden when
counsel=s actions may have
been based on tactical decisions and the record does not specifically focus on
the reasons for trial counsel=s conduct.  See Bone v. State, 77 S.W.3d 828, 830
(Tex. Crim. App. 2002). 

In this case, appellant filed a motion for new trial in
which he asserted the evidence was insufficient to support a finding of guilt
and the trial court erred in allowing the co-defendants to testify without
sufficient corroboration for the admission of their testimony.  Appellant did not raise the issue of
ineffective assistance in his motion for new trial.  Without a hearing on a motion for new trial
or a motion based on ineffective assistance, the record is silent as to why
trial counsel acted as he did.  In the
face of a silent record, this court will not speculate about why trial counsel
did or did not raise objections to the evidence.  See Jackson, 877 S.W.2d at 771.  In the absence of any evidence to the
contrary, we cannot conclude the performance of appellant=s trial counsel
was deficient.  See id.  Appellant=s second issue is
overruled.








V.  Right to Counsel at Lineup

In his third issue, appellant contends the trial court
erred in allowing the jury to hear testimony from a police officer about the
complainant=s viewing of a video-taped lineup and his
identification of appellant from the lineup because the lineup was conducted
without counsel.  The right to counsel
does not attach until the initiation of adversarial judicial proceedings,
including formal charge, preliminary hearing, indictment, information, or
arraignment.  Texas v. Cobb, 532
U.S. 162, 167B68 (2001). 
An arrest alone does not trigger the right.  McFarland v. State, 928 S.W.2d 482,
507 (Tex. Crim. App. 1996), overruled on other grounds, Mosley v.
State, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998); Merritt v. State,
76 S.W.3d 632, 634 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  At the time
appellant appeared in a lineup, no felony complaint or indictment had been
filed regarding the aggravated robbery. 
Therefore, appellant=s right to counsel
had not yet attached.  See Merritt,
76 S.W.3d at 634.

Further, appellant failed to object to the complainant=s testimony
concerning his identification of appellant at the lineup.  When the same or substantially similar
evidence is admitted without objection, any error is waived.  Etheridge v. State, 903 S.W.2d 1, 14
(Tex. Crim. App. 1994).  Appellant=s third issue is
overruled.

The judgment of the trial court is affirmed.

 

 

 

 

 

/s/      Leslie Brock Yates

Justice

 

 

 

Judgment
rendered and Memorandum Opinion filed September 23, 2004.

Panel
consists of Justices Yates, Anderson, and Hudson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).