Opinion filed May 4, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed May 4, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00061-CR 

                                                    __________

 

                             CURMIT THOMAS HATCHER, Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 56th District Court

                                                      Galveston
County, Texas

                                                Trial
Court Cause No. 03CR3867 

 



 

                                                                   O
P I N I O N

 

The jury convicted Curmit Thomas Hatcher of
aggravated sexual assault of a child younger than fourteen years old and
assessed his punishment at confinement for thirty-five years.  Appellant had invited the victim and four or
five other boys to stay overnight at his house. The jury found that appellant,
known as ACoach,@ sexually assaulted the five-year-old
victim during the sleepover at appellant=s
house on October 9, 2003.  We affirm.








The trial court designated the victim=s mother as the outcry witness.  Appellant argues that the trial court erred
in allowing Eunice Contreras, the victim=s
psychotherapist, to testify to a statement the victim made to her and to state
that she had a legal duty to report child abuse after her interview with the
victim.  Appellant also argues that he
received ineffective assistance of counsel and that the evidence was factually
insufficient to support the conviction.

Designation of the Outcry Witness

Tex. Code
Crim. Proc. Ann. art. 38.072 (Vernon 2005) governs the admissibility of
victim outcry statements.  It provides
that certain hearsay testimony is admissible in the prosecution of offenses
committed against children twelve years of age or younger.  Article 38.072 applies to outcry statements
that (1) were made by the victim against whom the offense was allegedly
committed and (2) were made to the first person, eighteen years of age or
older, other than the defendant, to whom the victim made a statement about the
offense.  To constitute outcry evidence,
the victim=s
statement must be more than a general allusion that sexual abuse is going on;
the statement must describe the offense in some discernible manner.  Garcia v. State, 792 S.W.2d 88, 92
(Tex. Crim. App. 1990); Smith v. State, 131 S.W.3d 928, 930-31 (Tex.
App.CEastland
2004, pet. ref=d).  A trial court has broad discretion in
determining the admissibility of outcry evidence, and its determination as to
the proper outcry witness will not be disturbed absent a showing in the record
that the trial court abused its discretion. 
Garcia, 792 S.W.2d at 92. 
A trial court abuses its discretion if it fails to analyze or apply the
law correctly.  State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

The State had selected Contreras as the outcry
witness, and the indictment was based on the victim=s
outcry statement to her that appellant Aput
it in my butt.@  The indictment alleged that appellant
sexually assaulted the victim, a child younger than fourteen years of age, by
penetrating the victim=s
anus with his male sexual organ.  See
Tex. Pen. Code Ann. ' 22.021(a)(1)(B)(i), (a)(2)(B) (Vernon
Supp. 2005).








At the beginning of the trial, the court held a
hearing outside the presence of the jury. 
Appellant had objected to the designation of Contreras as the outcry
witness, contending that the outcry witness should be Debra Ann Lammon, the
victim=s
mother.  Lammon testified that appellant
was the bus driver for the Woman=s
Crisis Center Discovery Program, an after-school program for children.  Lammon stated that, about a week after the
victim spent the night at appellant=s
apartment, she asked him why he was taking so long in the shower and if
something was wrong.  The victim told her
that Ahe was
hurting below.@  When Lammon asked him if somebody had done
something to him, the victim said, AYes.@ 
The victim then said ACoach@ but immediately changed his response
to ADustin and Dalton,@ two other boys who lived at the Crisis
Center.  The victim told her that
somebody had been messing with Dustin and Dalton.  Lammon testified that she went to see John
Doyle, who was in charge of the Crisis Center, that evening and told him that A[her] son [was] telling [her]
something.  Can you assist me?@ 
Doyle contacted Contreras, the psychotherapist, and asked her to speak
with Lammon.

Contreras testified that, from October 13, 2003,
when she first spoke to Lammon to December 12, 2003, when she interviewed the
victim, she and Lammon had scheduled three appointments.  Due to conflicts, Lammon did not bring the
victim in until December 12.  When
Contreras asked the victim about the night at Coach=s
house, he became more restless and distracted and asked if he could go to his
mother.  She asked what happened to
him.  At first, the victim would not
respond and played with the toys in her office.  Contreras asked him again if anything had
happened, and he said, AYes.@ 
The victim pointed downward and said that Coach had Aput his thing there@ but that he did not Awant to say it.@  Contreras then asked the victim to whisper it
in her ear so that she could understand. 
The victim then whispered in her ear that A[h]e
put it in my butt.@

The State argues that the trial court abused its
discretion in designating the mother as the outcry witness.  We agree. 
Lammon=s
testimony was that her five-year-old son only made a general allusion to
something that had happened to him; that is why she sought some
assistance.  The mother=s lack of knowledge was further
confirmed during the jury trial by Dr. James Lewis Lukefahr, the pediatrician
who examined the victim on December 15, 2003, at the Children=s Advocacy Clinic.  Dr. Lukefahr testified that, according to his
records, the mother had stated that the victim Ahas
not told me anything, really.@  The victim first described the alleged
offense in a discernible manner to Contreras. Contreras was the proper outcry
witness.  See Garcia, 792 S.W.2d
at 88.

Issues Concerning Contreras=s Testimony








In appellant=s
first issue, he argues that the trial court erred in allowing Contreras to
testify during cross-examination that the victim told her A[Coach] stuck it in my butt.@ 
In appellant=s second
issue, he argues alternatively that appellant received ineffective assistance
of counsel if his trial counsel Aopened
the door@ to allow
Contreras to testify about the statement. 
In appellant=s third
issue, he argues that the trial court erred in allowing Contreras to state that
she had a legal duty to report child abuse after her interview with the victim.

Even assuming that the mother was the proper
outcry witness, the trial court properly admitted, under the optional
completeness rule, Contreras=s
statement concerning what the victim whispered to her.  During cross-examination, counsel for
appellant began reading from Contreras=s
notes and asked her about what the victim had told her.  Specifically, counsel asked if the victim had
told Contreras that two boys had touched him. 
At that point, the State objected, and the jury was released for
lunch.  The State argued that counsel for
appellant was violating the motion in limine by bringing up other possible acts
of sexual abuse and that, if counsel continued to ask Contreras what she was
told during the therapy session, the State should be allowed to ask Contreras
about the statement that the victim whispered to her.  The trial court sustained the State=s objection and warned counsel that, if
he wanted to pursue what the victim told the therapist, he ran the risk that
the victim=s
statement Ahe put it
in my butt@ would be
allowed into evidence.

Appellant points out in his brief that appellant=s trial counsel=s
strategy was to elicit testimony from Contreras that would challenge the victim=s credibility before he testified.  When the jury returned, counsel for appellant
got Contreras to acknowledge that children can become agitated when telling a
lie and that the victim had made some unbelievable statements to her.  Contreras testified that one unbelievable
statement was that the victim told her that appellant had confessed to him that
appellant had murdered other boys. 
Counsel then asked the following questions:

[COUNSEL]:
And you also asked [the victim] if Coach had done anything to him and didn=t [the victim] shrug his shoulders?

 

[CONTRERAS]:
He shrugged his shoulders; right. 

 

[COUNSEL]:
And he kept playing; is that correct?

 

[CONTRERAS]:
Uh-huh.

 

On redirect, the State asked Contreras about what the victim had
whispered in her ear.  Over appellant=s objection, Contreras was allowed to
say that the victim said, AHe
put it in my butt.@








The questioning by appellant=s counsel left the jury with the
impression that the victim was not to be believed and that the victim had not
accused appellant during his therapy session with Contreras.  The State was entitled to correct that impression
under the rule of optional completeness. 
See Credille v. State, 925 S.W.2d 112, 116-17 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d). 
Moreover, there was no harm because the proper outcry witness was Contreras.  Appellant=s
first issue is overruled.

In appellant=s
second issue, he argues that he received ineffective assistance of counsel
because his trial counsel allowed the victim=s
whispered statement to come in.  To
determine whether appellant=s
trial counsel rendered ineffective assistance at trial, we must first determine
whether appellant has shown that counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Strickland v. Washington, 466
U.S. 668 (1984); Hernandez v. State, 988 S.W.2d 770 (Tex. Crim. App.
1999).  We must indulge a strong
presumption that counsel=s
conduct fell within the wide range of reasonable professional assistance; and
appellant must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Stafford v. State, 813 S.W.2d 503,
508-09 (Tex. Crim. App. 1991).

Appellant=s
trial counsel=s
representation did not fall below an objective standard of reasonableness.  Trial counsel adopted a strategy of attacking
the credibility of the child victim through asking Contreras about unbelievable
statements made by the victim.  That
strategy was a reasonable one even though it involved the risk that the trial
court would allow the whispered statement to come in.  Moreover, Contreras was the proper outcry
witness, and the whispered statement was the outcry.  Appellant=s
second issue is overruled.

In appellant=s
third issue, he contends that the trial court erred in allowing Contreras to
state that she made a report of child abuse after interviewing the victim.  Appellant=s
argument is that the victim=s
whispered statement should not have come in because it was hearsay, and
Contreras=s
statement that she made a report of child abuse implied that the victim told
her that appellant sexually abused him. 
Thus, appellant contends that the State circumvented the hearsay
prohibition through its question to Contreras. 
See Schaffer v. State, 721 S.W.2d 594, 597 (Tex. App.CCorpus Christi 1986), aff=d, 777 S.W.2d 111 (Tex. Crim. App.
1989).








First, appellant=s
objection at trial was to the form of the State=s
question, not that it elicited implied hearsay. 
Appellant=s
objection on appeal differs from his objection at trial.  Nothing is presented for review.  House v. State, 947 S.W.2d 251, 257
(Tex. Crim. App. 1997).  Second, the
victim=s
whispered statement was properly allowed either as the proper outcry statement
or as a statement under the doctrine of optional completeness.  Appellant=s
third issue is overruled.

 

 

Factually Sufficiency of the Evidence

In appellant=s
fourth issue, he argues that the evidence is factually insufficient.  To determine if the evidence is factually
sufficient, we must review all of the evidence in a neutral light and determine
whether the evidence supporting guilt is so weak that the verdict is clearly
wrong and manifestly unjust or whether the evidence contrary to the verdict is
so strong that the beyond-a-reasonable-doubt burden of proof could not have
been met.  Zuniga v. State, 144
S.W.3d 477 (Tex. Crim. App. 2004); Ross v. State, 133 S.W.3d 618 (Tex.
Crim. App. 2004); Vasquez v. State, 67 S.W.3d 229, 236 (Tex. Crim. App.
2002); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); Cain
v. State, 958 S.W.2d 404 (Tex. Crim. App. 1997); Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996). 
The jury, as the trier of fact, is the sole judge of the credibility of
the witnesses and of the weight to be given to their testimony.  Tex.
Code Crim. Proc. Ann. art. 36.13 (Vernon 1981), art. 38.04 (Vernon
1979).  The jury may accept one version
of the facts and reject another.  Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).

Contreras was the State=s
first witness.  She testified that the
victim described what appellant did to him, that the victim said it hurt, and
that he wanted to see a nurse.  Lammon,
the victim=s mother,
was the second witness.  She basically
repeated her testimony at the pretrial hearing where the trial court selected
her as the outcry witness.  Lammons did
add that, after the conversation when the victim was in the shower, he did not
want to go to the Discovery Club again. 
Also, the victim started sexually acting out after that day, asking
children at school to suck his private area and French kiss.








Dr. Lukefahr, a pediatrician, stated that he was a
Medical Director of the ABC Center, which is the University of Texas Medical
Branch=s
facility for examining children who may have been the victims of child abuse or
neglect.  Dr. Lukefahr first examined the
victim on December 15, 2003, and he introduced the medical records of the
victim.  Dr. Lukefahr testified that the
physical examination of the victim found abnormalities that A[c]ould be consistent with abuse but
also seen in non-abused children.@  Although the physical findings by themselves
were nonspecific, Dr. Lukefahr explained that A[t]he
anal area of the body is particularly able to heal superficial injuries very
quickly.@  Because some anal injuries have been
documented as being healed within twenty-four hours, he was not surprised that
the physical findings of his examination turned out to be nonspecific two
months after the sleepover.

Dr. Lukefahr further testified that the behavioral
history given by the mother and the reported physical complaints by the victim
to his mother raised concerns for sexual abuse. 
The mother had reported that there was a dramatic change in the victim=s behavior that started in October
2003.  The victim had regressed in his
toilet training by wetting and defecating in his pants and had rectal
pain.  Dr. Lukefahr stated that those
behavioral changes raised concerns that something traumatic had happened to the
victim during the few months prior to his examination of the victim.

The victim was six years old when he
testified.  The victim=s testimony was clear.  When asked if something happened to his body
that he didn=t like,
he answered, AYes.@ 
The victim said it was Coach Hatcher who touched his back private with
Coach=s front
private and that it happened at Coach Hatcher=s
house.  It made him feel sad.  During cross-examination, appellant=s counsel asked if Dustin and Dalton
had ever touched him in the butt.  The
victim=s answer
was an unequivocal A[n]o.@ 
The victim testified that he was pretending that he was sleeping when
appellant touched the victim=s
back private with appellant=s
front private.

Appellant=s
first witness was John Doyle, a case manager at the shelter.  He testified that Lammon had not told him of
any incident involving appellant and that Lammon had not made a report of any
sexual abuse.  His testimony was
consistent with all the other testimony that demonstrates that the trial court
selected the wrong outcry witness under the requirements of Garcia.

Appellant then called two boys to testify.  Although both testified that they did not see
appellant do anything to the victim during the night of the sleepover, both
admitted that something could have happened while they were asleep.








Appellant=s
next witness was Virginia Niebuhr, a clinical pediatric psychologist who saw
the victim four times between February and April 2004.  She testified that the victim had repeated
behavioral problems since August 2003. 
She diagnosed him as having attention deficit hyperactivity disorder
(ADHD).  On cross-examination, Dr.
Niebuhr stated that there was nothing about ADHD or an abusive or homeless past
that would make a five-year-old child not credible.  Dr. Niebuhr testified that the victim=s mother had brought him to her for an
opinion Aon how he
was doing@; he was
not there for the purpose of therapy or counseling to deal with sexual
abuse.  She testified that it was not
unusual that the victim did not tell her about the sexual abuse because the
victim had already made an outcry (to Contreras) and, often, children do not
want to tell their story again.  Dr.
Niebuhr gave her opinion that she did not think that children make false
accusations about sexual abuse and that sexual abuse was a major cause of a
child sexually acting out.

Appellant=s
last witness was Jimmi Dean Jones, the victim=s
elementary school teacher.  She testified
that the victim had behavioral problems from the start of school in September
2003.  Jones stated that one morning the
victim came in and told her that they were going to get lots of money and that
they had filed charges for the victim. 
She did not ask what the charges were. 
Jones said that she was trying to get the victim some counseling.  The victim would lie to her about whether he
had hit another child.  On one occasion,
in August, the victim pulled his pants down, and she told him that that was not
acceptable.  Between August 2003 and
March 2004, when the victim left that school, Jones suspended the victim
twenty-four times.  During
cross-examination, Jones acknowledged that the victim could tell the truth,
that she had never had a conversation with the victim about sexual abuse, that
she was not present when Contreras interviewed the victim, and that she was not
familiar with the victim=s
medical records.

Having reviewed all of the evidence in a neutral
light, we do not find that the evidence supporting guilt is so weak that the
verdict is clearly wrong and manifestly unjust or that the evidence contrary to
the verdict is so strong that the beyond-a-reasonable-doubt burden of proof
could not have been met.  See Zuniga,
144 S.W.3d at 377.  The evidence is
factually sufficient to support the verdict. 
Appellant=s fourth
issue is overruled.

This Court=s
Ruling

The judgment of the trial court is affirmed.

 

May 4,
2006                                                                            TERRY
McCALL

Do not
publish.  See Tex. R. App. P. 47.2(b).                         JUSTICE

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.