Bobby Joe CREDILLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–93–00459–CR.

Court of Appeals of Texas, Houston (14th Dist.).

May 23, 1996.

Rehearing Overruled July 25, 1996.

Allen C. Isbell, Houston, for appellants.

Scott A. Durfee, Houston, for appellee.

Before YATES, FOWLER and DRAUGHN[1], JJ.

## OPINION

DRAUGHN, Justice (Assigned).

Appellant entered a plea of not guilty before a jury to the offense of aggravated sexual assault. He was convicted and the jury assessed punishment at ten years in prison, probated, and a $10,000 fine. Appellant raises eight points of error complaining of the trial court's failure to strike a juror for cause and the admission of certain evidence. We affirm.

1. Justice Joe L. Draughn sitting by assignment.

On May 12, 1992, appellant's granddaughter, the complainant, was playing in the bathtub with her friend. The two children were spraying each other in the vagina with an ear syringe. When the complainant's mother removed the children from the bathtub, the complainant responded, "But that's what my Papaw does." Papaw was the complainant's name for appellant. The complainant later stated that Papaw had put his finger in her vagina and threatened to spank her if she told anyone. The complainant also told a teacher that her Papaw had put his finger in her "privates."

In his first point of error, appellant claims the trial court erred in overruling his motion to strike Juror No. 36 for cause because No. 36 stated she could not consider the full range of punishment. During voir dire of the jury panel, appellant's counsel asked the following question:

Could you consider the minimum punishment if you found Mr. Credille guilty in a proper case? You don't know what the facts are. You haven't heard any evidence. You will hear lots of different evidence about what a wonderful person they are or a horrible person they are, if they've been to jail. All kinds of evidence becomes admissible at punishment to help you decide what's in the best interest of society for this particular case. So, what I am asking is, now that you've had some more than time to think about it, I need to know whether or not each and every one of you could consider the full range of punishment and that includes as little as five years probation? Is there anyone who could not consider that [in] any possible case? Number 1, No. 3, 4. Second row, No. 9. Third row, No. 16, 19, 26, 27, 32, 36. Right side of the room? 52, 53, 54, 56 Anyone else? 63.

After appellant's attorney questioned the veniremembers individually on whether he or she could give appellant a fair trial, the judge asked for challenges for cause. During that process, appellant's counsel moved to strike Juror No. 36 for cause because she said she could not consider probation. The court re-

sponded, "That's denied." After both sides made their peremptory strikes, appellant stated he wanted to object. The court asked, "Object on number 36?" Appellant's counsel replied, "Yes." The court answered, "That's not the issue right now." The trial judge then swore in the jury. After the jury was sworn, the following occurred:

THE COURT: Before we recessed, Mr. Isbell [defense counsel] wanted to put something on the record concerning the jury selection.

MR. ISBELL: Your Honor, as I indicated to the Court, prior to the jury being sworn, we do want to object to the fact that we had to let juror No. 7, whose husband is a highway patrolman. We would have used a strike on her as opposed to using our strike on juror No. 36, in which we were denied our motion for cause in your peremptory challenge.

■■■ When the trial court erroneously overrules a challenge against a veniremember, the defendant is harmed only if he uses a peremptory strike to remove the veniremember and thereafter suffers a detriment from the loss of a strike. *Chambers v. State*, 866 S.W.2d 9, 22 (Tex.Crim.App.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). The defendant preserves error for review only if he uses all his peremptory strikes, asks for and is refused additional peremptory strikes, and is then forced to take an identified objectionable juror whom he would not otherwise have accepted had the trial court granted his challenge for cause or granted him additional strikes. *Adanandus v. State*, 866 S.W.2d 210, 220 (Tex.Crim.App.1993). The defendant must make the proper objection before the panel is sworn. *Jackson v. State*, 826 S.W.2d 751, 752 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). A defendant must pursue an objection until he receives an adverse ruling from the trial court and, if necessary, must press the trial court to make a definite ruling on his objection. *Darty v. State*, 709 S.W.2d 652, 655 (Tex.Crim.App. 1986).

■■■ In this case, appellant failed to pursue his objection to Juror No. 36 in a timely manner. When appellant first objected to Juror No. 36, the court denied his challenge for cause. After the parties' strikes were made, appellant attempted to renew his objection to Juror No. 36 to which the judge responded, "That's not the issue right now." Appellant did not identify an objectionable juror who was seated on the panel until after the jury was sworn. To preserve error on appeal when a trial court grants or denies a challenge for cause, counsel must object at trial and the objection must be made in a timely manner. *See Fuller v. State*, 827 S.W.2d 919, 924–25 (Tex.Crim.App.1992), *cert. denied*, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). Appellant's objection after the jury was sworn was not timely. *See Jackson*, 826 S.W.2d at 752. Because appellant failed to press the trial judge to make a specific ruling before the jury was sworn, he failed to preserve error.

■■■ Further, the record is not clear as to which question Juror No. 36 answered. When appellant's counsel asked the venire whether they could consider the full range of punishment, she asked two questions. Although No. 36 raised her hand, it is not clear whether she was responding to the first question—"I need to know whether or not each and every one of you could consider the full range of punishment and that includes as little as five years probation?"—or the second question—"is there anyone who could not consider that [in] any possible case?" If No. 36 was answering the first question, she could have been raising her hand to say she could consider probation. The record of the voir dire examination is insufficient to show that Juror No. 36 should have been struck. Appellant's first point of error is overruled.

■■■ In his second point of error, appellant claims the trial court erred in overruling his motion for new trial. In his motion for new trial, appellant introduced into evidence an affidavit from Juror No. 36, in which she attested that she raised her hand in answer to appellant's question regarding the range of punishment. Error in the selection of the jury, however, cannot be preserved in a motion for new trial. Rule 52(a) of the Rules of Appellate Procedure demands that a party present its evidence and all arguments in

support thereof to allow the trial court to correct any error in a timely manner. *See Fuller v. State*, 827 S.W.2d 919, 924–25. As discussed above, a motion for new trial does not timely raise the issue of a venire-member's alleged inability to consider the full range of punishment. Preservation of error is not merely a technical procedural matter by which appellate courts seek to overrule points of error in a cursory manner. Fairness to all parties requires a party to advance his complaints at a time when there is an opportunity to respond or cure them. *See generally Young v. State*, 826 S.W.2d 141, 149 (Tex.Crim.App.1991) (Campbell, J., dissenting). Appellant's second point of error is overruled.

In his third, fourth and fifth points of error, appellant claims the trial court erred in admitting into evidence a videotaped interview of the complainant. At trial, the State called Pam Erickson of the Baytown Police Department, who testified as to her investigation of appellant. On cross-examination, appellant vigorously attacked Erickson's belief in the complainant's credibility. Appellant pointed to specific statements made by the complainant during the interview to show that Erickson did not follow through on all the accusations made by complainant in the videotape. When appellant challenged Erickson on the complainant's statement that her brother had touched her, Erickson attempted to explain why she felt the complainant's statement was only a slip of the tongue and not a specific accusation.

On redirect examination of Erickson, the State determined that the matters appellant had attacked on cross-examination were from the videotaped interview. The following colloquy occurred:

> [THE PROSECUTOR]: And when you were interviewing her on that video, were there other statements that she made in that same conversation where she talked about Britney and in the same conversation where she talked about or mentioned the word "brother"—I mean, there is more on that videotape other than those two things, right?
>
> [MS. ERICKSON]: Right.

> [THE PROSECUTOR]: I mean, it was a whole conversation?
>
> [MS. ERICKSON]: Correct.

The State thereafter laid the predicate for admission of the videotaped interview of the complainant and the trial court admitted the videotape under the Rule of Optional Completeness. TEX.R.CRIM.EVID. 107. Rule 107 states:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence. "Writing or recorded statement" includes depositions.

Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *See Johnson v. State*, 747 S.W.2d 451, 453–54 (Tex.App.—Houston [14th Dist.], 1988, pet. ref'd). The purpose of the rule is to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing. *Solano v. State*, 728 S.W.2d 428, 430–31 (Tex.App.—San Antonio, 1987, pet. ref'd). When defense counsel pursues a subject that would ordinarily be outside the realm of proper comment by the prosecutor, the defendant opens the door and creates a right of reply for the State. *Parr v. State*, 557 S.W.2d 99, 102 (Tex.Crim.App.1977).

Appellant first complains that the videotape was not admissible because he did not seek to introduce portions of the videotape into evidence. Rule 107, however, in its text, permits the introduction of other types of evidence to clarify the opponent's evidence. *See Foster v. State*, 779 S.W.2d 845, 855–58 (Tex.Crim.App.1989), *cert. denied*, 494 U.S. 1039, 110 S.Ct. 1505, 108 L.Ed.2d 639

(1990). Therefore, because appellant inquired into the videotaped conversation between Erickson and the complainant, the State was entitled to offer any other evidence that was necessary to make the conversation fully understood.

■ Appellant further claims that the entire videotape was not admissible because he inquired into only two aspects of the conversation between Erickson and the complainant, that is, the complainant's mention of a friend named Britany, and the complainant's alleged accusation that her brother had touched her. Because appellant challenged the complainant's credibility during her interview with Erickson, it was necessary to show the specific instances in the context of the entire interview. Further, during cross-examination of Erickson, appellant attacked Erickson's failure to follow through on her investigation. For those reasons, the trial court did not err in admitting the entire videotape under Rule 107.

■ Appellant further claims that admission of the videotape violated his right to confrontation. As stated earlier, Rule 107 allows the admission of otherwise inadmissible evidence. *Johnson v. State*, 747 S.W.2d at 453–54. Although the complainant's interview may not have been admissible under the confrontation clause, appellant opened the door with his cross-examination of Erickson. Appellant's third, fourth, and fifth points of error are overruled.

■ In his sixth, seventh, and eighth points of error, appellant claims the trial court erred in admitting the written statements of the complainant's parents, Jeff and Sheila. During her direct examination, Pam Erickson testified that, on May 19, 1992, Jeff and Sheila gave written statements of what they knew about their daughter's allegations.

On cross-examination of Erickson, the following took place between appellant's counsel and Erickson:

Q. [appellant's counsel]: Both Jeff and Sheila told you, and it's in their statements that at that time, March 12, 1992, when they quizzed little K__, K__ said it happened one time with Papaw, only one time?

A. [Ms. Erickson]: Correct.

Q. And that it involved a finger touching K__, correct?

A. Correct.

Q. And they were told by K__ it was a one-time event?

\* \* \* \* \* \*

Q. And Bobby Credille, in conversation with Jeff and Sheila about what K__ had told them on March 12, 1992, swore to God that it didn't happen, right?

A. I wasn't there. I don't know.

Q. Well, it's in the statement, isn't it?

A. I had been told it happened, yes.

Q. You've been very free on direct examination by the prosecutor to say what Jeff and Sheila told you in both those statements. It tells you that that is exactly what happened: The parents confront the Credille's with what K__ has said. He swears under oath to God it didn't happen and everybody agrees that K__ and Bobby Credille will not be alone together, just to protect everybody. Isn't that what happened?

MS. MUNIER: Objection. That calls for speculation on her part again.

THE COURT: Overruled.

MS. MUNIER: She doesn't know what happened. She can only testify what she was told.

THE COURT: Well, she took the statement.

A. In Jeff K__'s statement he said that Bobby Credille swore to God.

Q. All right. So, do you agree or disagree with my assessment, with my review of the question?

A. In Jeff K__'s statement, he told me that he swore to God. In the other statement, it is not there.

\* \* \* \* \* \*

Q. Now, you criticized Sheila K__. Let's talk about Sheila K__'s statement. Sheila K__ told you several reasons why she was skeptical of K__'s allegations against Bobby Credille, didn't she?

A. She gave me one reason why she was skeptical.

Q. She gave you more than one, didn't she?

A. One comes to mind.

Q. Well, you've read her statement today. Can't you remember what's in her statement today or do you need to refresh your memory?

A. I can't remember the one I read in the statement.

Q. She told you that K⎯ was telling her, not Jeff but telling her, that all these other things about going to the couch and undressing and all these other things of inappropriate behavior supposedly between Bobby Credille and K⎯ that these were happening in the period of time after March of 1992, when she knew that Bobby Credille was never alone with K⎯; isn't that what she told you?

A. I don't know. I don't agree with the part of "never alone."

Q. Is that what she told you?

\*     \*     \*     \*     \*     \*

Q. And refresh your memory with the statement that you've testified that you took from Sheila K⎯. Have you refreshed your memory?

A. Yes.

Q. Sheila K⎯ told you one reason she was skeptical about what K⎯ was saying is that after they had this agreement among the family that Bobby Credille would not be alone with K⎯ after March 12th, that later K⎯ was telling about events—let me get the wording: "Other times later K⎯ would tell her that Bobby made her lay down on the couch and he touched her and asked her if it felt good." She said that one time she was changing in the living room and he asked her to sit on his lap and she didn't have any clothes on. And these are supposed events that happened later when Sheila knew the weren't together alone; isn't that right?

A. I think that's a misinterpretation.

MS. MUNIER: I would point out that what Mr. Isbell is reading from is the recounting that Officer Erickson put in her police report and not what Sheila put down in writing and swore to.

MR. ISBELL: I'm sorry. This is her sworn statement that I am reading from.

Q. Let me ask you, if this is not what is sworn to: "My mom told me that if I was that upset, that K⎯ would never be left alone with Bobby when she was at their house. Other times later K⎯ would tell me that Bobby made her lay down only [sic] the couch and he touched her and asked her if it felt good. She said that one time she was changing in the living room and he asked her to sit on his lap. She didn't have any clothes on." And that was written and sworn to, wasn't it?

A. Yes, it's in the sworn statement.

Q. All right.

A. But I still feel—

Q. Now, the second reason why Sheila K⎯ did not believe K⎯ was saying—

MS. MUNIER: I'm going to object to counsel saying that this is a reason why Sheila did not believe K⎯ K⎯. First of all, that's not in evidence and that is not in her statement, that she did not believe K⎯. That is nowhere in here.

THE COURT: You are going to have your right to redirect here in a minute.

Q. Number two is that one time when K⎯ had some problems and the doctor had given her some salve to put on her private parts. K⎯ asked Bobby Credille to apply that medicine to her private parts and Bobby Credille said: "No, you have to wait until your Mamaw gets out of the shower to do that." Isn't that another thing she told you?

A. That is in the statement, yes.

On redirect examination, the State offered the statements of Jeff and Sheila K⎯ into evidence. The trial court admitted the statements after the State later produced the originals. The statements were admissible under the Rule of Optional Completeness. *See* Tex.R.Crim.Evid. 107. Not only did defense counsel refer to both statements in his cross-examination of Erickson, he read portions of Sheila's statement, and encouraged Erickson to refresh her memory with the sworn statement. Appellant opened the door to the admissibility of the written statements and the State waltzed through the breach.

The trial court did not abuse its discretion in admitting the written statements. Appellant's sixth, seventh, and eighth points of error are overruled.

The judgment of the trial court is affirmed.