Becker v. State







COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JIMMIE AGUIRRE,                                           )                  No. 08-05-00015-CR
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  292nd District Court
)
THE STATE OF TEXAS,                                   )                  of Dallas County, Texas
)
                                    Appellee.                          )                  (TC# F-0273167-KV)

O P I N I O N

            Jimmie Aguirre appeals from his conviction of aggravated sexual assault of a child. A jury
found Appellant guilty and assessed his punishment at imprisonment for a term of ten years. We
affirm. 
FACTUAL SUMMARY
            M.B. met her mother’s boyfriend, Appellant, when she was seven or eight years old. 
Appellant first touched M.B.’s “private” when they were in the car and stopped at a red light. He
reached over and placed his hand over her clothes on her private. On another occasion, she and
Appellant were watching television at her mother’s apartment when Appellant reached over and
rubbed slowly on the top of her legs. In the next incident, Appellant spent the night at her house and
M.B. and her two sisters slept on the waterbed with their mother and Appellant. During the night,
M.B. woke up when she felt Appellant rubbing what she referred to as the top of her legs. M.B.
recalled that it made her feel “really bad.” Appellant stopped when M.B.’s mother woke up and
went to the bathroom. One other time, Appellant followed M.B. into the bathroom, pulled down her
panties and touched her “private part” with his hand and tongue.
            At first, M.B. did not tell anyone that Appellant had touched her because she was afraid. But
one day, M.B.’s mother told her that Appellant was coming over to bring them bagels. She told her
mother several times that she did not want Appellant to come to their home. When asked why, M.B.
explained that Appellant had been touching her and had licked her but she did not disclose any
details of what had happened. M.B. was subsequently interviewed at the Dallas Children’s
Advocacy Center by Lori Langston, who is the Center’s lead forensic interviewer. M.B. told
Langston that Appellant had touched her private part. M.B. also told her that Appellant had licked
her “tee tee” while she was in the bathroom.
            At trial, Appellant testified that he had hugged M.B. and might have accidentally brushed her
legs when buckling the seat beat for her, but he otherwise denied all of M.B.’s allegations regarding
his touching her. He also admitted that M.B. and her siblings had slept with them a few times when
he stayed over at the apartment but he denied ever touching M.B. while they were in the bed
together.
VIDEOTAPED INTERVIEW
            In his sole point of error, Appellant contends that the trial court abused its discretion by
admitting a videotaped interview of M.B. conducted by Lori Langston. The State responds that
Appellant opened the door to admission by cross-examining Langston about specific statements
made by the child during the course of the interview.
            At trial, M.B. testified that Appellant touched her on one occasion when whey were all in bed
together, but he stopped when M.B.’s mother got up to use the restroom. During cross-examination,
Appellant’s counsel sought to impeach the child by asking her whether she told Langston that the
touching occurred after M.B.’s mother got up to go to the bathroom. M.B. denied having done so. 
Defense counsel revisited the issue during his cross-examination of Langston:
[Defense counsel]: Okay. [M.B.] also related to you an incident that she said
happened while she was sleeping in the bed with Jimmie and her mother and perhaps
her other sisters; is that correct?
 
[Langston]: Yes.
 
[Defense counsel]: Okay. Isn’t it true that when y’all discussed that, she stated that
[Appellant] -- she was sleeping on her stomach and [Appellant] turned her over?
 
[Langston]: Yes, and that gets a little confusing because actually she -- there are two
incidents and she begins talking about then at the incident of the waterbed that you’re
referring to when he spent the night, and so there are two incidents. She’s talking
about one and then she starts to tell me about another.
 
[Defense counsel]: Okay. But she did say that [Appellant] turned her over on the
incident when they were in the bed; is that correct?
 
[Langston]: I believe that that was another incident that she began to tell me about
and then I redirected her to the time on the waterbed.
 
[Defense counsel]: Okay. And she also told you that her mother got up to go to the
bathroom and then that’s when [Appellant] touched her. That’s what she said; is that
correct?
 
[Langston]: Yes.
 
[Defense counsel]: So the order is essentially mother got up to go to the bathroom. 
She was on her stomach. [Appellant] turned her over and was touching her while
mother was using the bathroom; is that correct?
 
[Langston]: Yes. I’m not -- she did not tell me that she was on her stomach. That’s
when she began to -- she was telling me about the touching on her tee-tee, and then
she began to talk about another time when she was on her side with her legs crossed,
and I redirected her, you know, to, ‘Try to be specific about which time you were
talking about. Let’s finish talking about this time.’ So I’m not clear whether she was
on her back, on her front, on her side. I believe she was on her side and he turned
her.
 
[Defense counsel]: Okay. And you said that word ‘redirected her.’ What do you
mean by that term?
 
[Langston]: Well, kids will begin talking about one incident or providing
information about something. Then they’ll start talking about something else. You
know, they’ll move off topic. You know, they’ll talk about something and it jars
their memory or they begin talking about something else. So they’ll stop talking
about that event. They’ll start talking about something else. And redirecting is just
to try to stay on topic, stay on one event, and have that child finish telling you about
one event before you go to the next one to try to eliminate some of the confusion
that’s clear to the child but not to us.
 
[Defense counsel]: Now, isn’t it true that during the course of the interview [M.B.]
relayed to you that her mother had told her that some girls or women had come over
and [Appellant] had done that? Do you remember that statement being made?
 
[Langston]: I remember it a little bit differently, but yes, I have that statement written
down.
 
[Defense counsel]: Okay. And during the course or as part of the interview, I believe
you asked [M.B.] if she had ever seen a penis; is that correct?
 
[Langston]: You know, I don’t recall asking her that question. It may have been on
the tape and I did not transcribe or write down all of my questions. I wrote her
responses. I could have asked her that, but you know, I don’t recall that right now.
 
[Defense counsel]: Do you remember her response or recall her response that she
had seen it in pictures?
 
[Langston]: She may have talked about that when we were going over the
body drawings. Again I’m sorry. It’s a very lengthy interview. I don’t recall that
specific part. If there’s a certain section of the videotape I could review, I could, you
know . . . .

            Defense counsel then asked for a recess so that Langston could review the videotape. During
the recess, the prosecutor argued that the tape had become admissible because Appellant had opened
the door by cross-examining Langston about specific statements made by M.B. on the tape and by
suggesting through cross-examination that Langston had asked leading questions. Appellant
responded that he had not opened the door. The court overruled Appellant’s objection and admitted
the videotape. 
            Rule 107 of the Texas Rules of Evidence provides that: 
When part of an act, declaration, conversation, writing or recorded statement is given
in evidence by one party, the whole on the same subject may be inquired into by the
other, and any other act, declaration, writing or recorded statement which is necessary
to make it fully understood or to explain the same may also be given in evidence, as
when a letter is read, all letters on the same subject between the same parties may be
given. ‘Writing or recorded statement’ includes depositions.

Tex.R.Evid. 107. Rule 107 is one of admissibility and permits the introduction of otherwise
inadmissible evidence when that evidence is necessary to fully and fairly explain a matter “opened
up” by the adverse party. Credille v. State, 925 S.W.2d 112, 116 (Tex.App.--Houston [14th Dist.]
1996, pet. ref’d). The purpose of Rule 107 is to reduce the possibility of confusion, distortion, or
false impressions arising from the introduction of part of a writing, tape, or conversation out of
context. Id.; Patel v. State, 856 S.W.2d 486 (Tex.App.--Houston [1st Dist.] 1993, pet. ref’d). To
be admitted under the rule, the other statement must be “on the same subject” and must be
“necessary to make it fully understood.” Sauceda v. State, 129 S.W.3d 116, 123 (Tex.Crim.App.
2004)(quoting Tex.R. Evid. 107).
            In Credille, the defense sought to impeach the credibility of a child complainant by
cross-examining the police officer who had interviewed the complainant. Credille’s counsel inquired
during cross-examination about specific statements made by the complainant during the interview. 
On redirect examination, the State established that the statements came from an interview that had
been videotaped, and it successfully introduced the entire videotape into evidence. The Fourteenth
Court of Appeals upheld the trial court’s ruling under Rule 107. Credille, 925 S.W.2d at 117. 
Because the defendant inquired into the videotaped conversation, the State was entitled to offer any
other evidence that was necessary to make the conversation fully understood. Id. The Court of
Criminal Appeals questioned this broad language in Sauceda, but determined that Credille had been
correctly decided because defense counsel had pointed to specific statements made by the
complainant during the interview, which, taken out of context, could have created the possibility of
the jury receiving a false impression from hearing only a part of the conversation. Sauceda, 129
S.W.3d at 123.
            We conclude that Credille is indistinguishable. Appellant’s counsel first questioned M.B.
about specific statements she had made to Langston in the videotaped interview. Rather than
introducing the videotape, or a portion of it, for impeachment purposes, he sought to establish
through cross-examination of Langston that M.B.’s trial testimony regarding the incident on the
waterbed was inconsistent with specific statements made during the interview. Langston explained
that this portion of the interview was confusing but she believed M.B. was discussing two different
incidents and blurring them together.


 Appellant also questioned Langston about other statements
made by M.B. during the interview, but Langston either could not remember the statements or
remembered it differently than did counsel. Counsel’s cross-examination of Langston about M.B.’s
statements created a potential for confusion and false impressions had the jury not been permitted
to see and hear the conversation in context . Consequently, the trial court did not abuse its discretion
by admitting the videotape. Appellant’s sole point of error is overruled. We affirm the judgment
of the trial court.

February 9, 2006                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)