

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

**NO. 2-07-281-CR**

---

SAJIR ALVAREZ                                                        APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I.     Introduction

A jury convicted Appellant Sajir Alvarez of sexual assault and assessed a two-year sentence.  In his sole point, Appellant argues that the trial court abused its discretion when it permitted hearsay testimony from Detective Schloeman concerning a document not in evidence.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

L.V. testified that she met Appellant when she was seventeen in the fall of 2004 at Tarrant County College ("TCC"), through their mutual friend Avalos. On October 16, 2004, Appellant and L.V. went on their first date. L.V. testified that Appellant bought alcoholic beverages for them and then parked at a soccer field at TCC. L.V. testified that they talked and kissed, and that Appellant tried to get on top of her in the car. L.V. stated that she told him she "didn't know him like that" and she was not okay with that. According to her, Appellant then moved back to his side of the car. At 11:00 p.m., Appellant and L.V. went to a small party at Appellant's friend Garza's house in north Fort Worth. L.V. testified that she drank more at that residence.

Garza testified that he noticed Appellant and L.V. were still at the house when he ended the party at 3:00 in the morning. He stated that he saw L.V. being placed by someone in Appellant's white car, and that she appeared passed out.

L.V. testified that she remembered blacking out at the party while sitting in a chair by the car and waking up at TCC, lying in the soccer field. L.V. stated that after she awoke, she was unable to place a phone call because she still felt out of it. She stated that she passed out again and woke up when

Appellant was putting her in his car at the soccer field. Appellant drove her to meet Avalos at a convenience store near TCC.

Avalos met the two at the convenience store after receiving two calls from Appellant who first claimed he was searching for L.V. Avalos found L.V. passed out in the front seat. Avalos took L.V. to L.V's sister's house. L.V.'s parents then took L.V. to the hospital.

At trial, L.V. described her condition when she was picked up by Avalos: she had bruises and scratches on her torso, her clothes were inside out, and she had a "big knot on [her] head." She testified that those bruises were not there before she went out with Appellant that night. Avalos testified about L.V.'s appearance when she met Appellant and L.V. at the convenience store early that morning. Avalos noticed L.V.'s grassy and dirty clothing and "red and purple marks" all over L.V.'s chest. Avalos stated that L.V. had a blank stare on her face and did not appear to know where she was. L.V. did not remember what had happened. Avalos confirmed that after they went to L.V.'s sister's house, the sister called L.V.'s parents, who took her to the hospital. Avalos further testified that Appellant did not offer to go with L.V. to her sister's house and never contacted Avalos to find out how L.V. was doing.

Nurse McGuire testified that L.V. arrived at the hospital at 9:04 a.m. after the alleged assault. She stated that she collected DNA swabs from L.V. at the

3

hospital using a sexual assault exam kit and noted that there were signs of trauma almost head-to-toe on L.V.'s body and trauma to her genital area. She testified there were thirty-three wounds, including abrasions, bruising or "hickeys" on L.V.'s chest, a laceration on her mouth, broken fingernails on L.V.'s fingers, and various bruises caused by rubbing over a rough surface; several of the injuries were consistent with an assault. The jury received photographs that showed bruises located on her chest and back. Nurse McGuire further stated that L.V. had redness and abrasions on the hymenal membrane and entrance of the vagina, and redness on the anal opening. She confirmed the redness was consistent with trauma to the vaginal area and hymenal ring. She stated that the wound to the anal opening supported the history of sexual assault. Testing of the DNA swabs collected by Nurse McGuire revealed Appellant was a major DNA contributor of the DNA.[2]

Detective Schloeman testified that during her investigation, Appellant gave a statement. She testified that Appellant had told her that he and L.V. had consensual sex that night, before going to the party at Garza's house. He told her that L.V. left the party with someone else. He also told her that he

---

[2] We will further discuss testimony about the DNA results in our analysis of Appellant's complaint below.

4

later received an anonymous phone call telling him where to find L.V. afterwards—a soccer field at TCC.

The jury returned a verdict of guilty and sentenced Appellant to two years' imprisonment.

### III. Appellant's Sole Point

Appellant argues that the trial court abused its discretion by allowing the State to elicit Detective Schloeman's hearsay testimony relating to a DNA results report that she had not personally prepared.

#### a. Standard of review

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Walters v. State,* 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Id*. Further, a trial court's decision regarding admissibility of evidence will be sustained if correct on any theory of law applicable to the case, even when the court's underlying reason for the decision is wrong. *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990) (citing *Spann v. State*, 448 S.W.2d 128 (Tex. Crim. App. 1969)).

**b. Applicable law**

Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule. *Walters*, 247 S.W.3d at 217. Rule 107 of the Texas Rules of Evidence is an exception to that rule. *Id.* Rule 107 or the "Rule of Optional Completeness" provides that,

> [w]hen part of an act, declaration, conversation, writing, or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

Tex. R. Evid. 107. This rule permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Walters*, 247 S.W.3d at 218; *Credille v. State*, 925 S.W.2d 112, 116 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd); *see also Callaway v. State*, 818 S.W.2d 816, 827 (Tex. App.—Amarillo 1991, pet. ref'd) (stating "[o]nce a matter is injected into the proceeding, evidence to fully explain the matter is relevant and admissible"). The purpose of rule 107 is to reduce the possibility of confusion, distortion, or false impressions arising from the introduction of part of a writing, tape, or conversation out of context. *Credille*, 925 S.W.2d at 116. It is not error for a trial court to admit hearsay evidence in a criminal case over objection when

6

it goes to clarify other hearsay evidence elicited by the opposition. *See Bunton v. State*, 136 S.W.3d 355, 367 (Tex. App.—Austin 2004, pet. ref'd) (discussing the propriety of the defense eliciting hearsay from the investigating police officer and the State later seeking to clarify the hearsay evidence). Rule 107 is not invoked by mere reference to a document, statement, or act. *Id*. The evidence introduced must be on the same subject; the rule does not permit the introduction of other similar but inadmissible evidence unless it is necessary to explain properly admitted evidence. *Walters*, 247 S.W.3d at 218; *Sauceda v. State*, 129 S.W.3d 116, 123 (Tex. Crim. App. 2003). Rule 107 is further limited by rule 403, which permits a trial judge to exclude otherwise relevant evidence if its unfair prejudicial effect or its likelihood of confusion of the issues substantially outweighs its probative value. *Walters,* 247 S.W.3d at 218.

### c.   DNA testimony

A DNA analyst, Uvonna Alexander, testified that Appellant's DNA was found on L.V.'s breasts, neck, vaginal, vulvar, anal, and perianal swabs. On cross-examination, Alexander stated that when she examined the swab taken from L.V.'s left breast she found DNA from a minor contributor of unknown origin along with DNA from Appellant and L.V. She confirmed that this meant that the sample from the swab contained a mixture of DNA originating from "at least three individuals." Alexander clarified that Appellant and L.V. were two

7

of the contributors in that mixture. Alexander also stated on cross-examination that although Appellant was found to be a contributor in the results of the vaginal swab, further testing would be necessary to determine if there was another contributor in that region.

During his cross-examination of Detective Schloeman, Appellant questioned her about the DNA results. Appellant asked: "Were you aware that the DNA results actually showed a third contributor on both the chest and vulvar swabs?"[3] The State objected to the question, stating that it was "an inaccurate statement." Schloeman answered that she was aware of this fact, and the court overruled the State's objection.

On redirect, the State asked Schloeman to review the results:

> Q. And in the conclusion section of the DNA lab, does it ever refer, to your knowledge and your recollection, to any third contributor being found in the vulvar swabs?
>
> [Appellant's counsel]: Your Honor, I object. She is testifying from a document that is hearsay.
>
> The Court: Overruled.

---

[3] Appellant appeared to be directing his inquiry with Schloeman towards Alexander's testimony concerning the *vaginal swab*, where she stated that further testing was needed to determine another contributor. Appellant mistakenly asserted the unknown-contributor evidence was from the "vulvar swab" while questioning Schloeman, a misstatement that started the line of questioning from both sides and the subsequent hearsay allegation.

8

A. No ma'am.

Q. And is the only mention of a third contributor with regards to the right upper chest wall?

A. That's right.

Q. And with regards to the vulvar swabs, was the only contributor being the Defendant?

A. That's right.

### d. Analysis

On cross-examination, Appellant's counsel had asked Detective Schloeman if she reviewed the document containing the DNA results and then proceeded to ask questions based on the DNA results. In this line of questioning, Appellant's counsel was requesting that Schloeman recall facts from a document that she had not written. Schloeman incorrectly stated that there was a third contributor on the vulvar swab, which left the jury with a false impression about the results. The trial court allowed the witness to clarify the results found in the document to clear up the incorrect impression left by Appellant's cross-examination.

Under rule 107, we hold that Appellant's counsel's cross-examination "opened the door" when he inquired about the DNA results. The trial court thus properly overruled Appellant's hearsay objection and allowed the State to question Schloeman on re-direct about the actual DNA results of the vulvar

swabs, which she had misstated during Appellant's cross-examination. *See*

*Martinez v. State*, 749 S.W.2d 556, 559 (Tex. App.—San Antonio 1988, no

pet.) (holding it is not error to admit hearsay evidence when it serves to clarify

other hearsay evidence elicited by the opposition). The State was able to

narrowly clarify that, regarding the vulvar swabs, the sole contributor was

Appellant, and it clarified the statement that the unknown third contributor

related to the chest swabs only.[4] Because Appellant opened the door to

Schloeman's testimony regarding the DNA results, the trial court did not abuse

its discretion by overruling Appellant's hearsay objection.

## VI. Harm analysis

Even if the trial court abused its discretion by allowing this evidence, any

error must be disregarded as admission of hearsay is nonconstitutional error and

this admission did not affect Appellant's substantial rights. Tex. R. App. P.

44.2(b); *see Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

With nonconstitutional errors, we are to disregard errors, defects, irregularities,

or variances that do not affect the substantial rights of the accused. Tex. R.

App. 44.2(b). A substantial right is affected when the error had a substantial

---

[4] Moreover, the State stayed within the subject of the vulvar swab results and the lack of a third contributor when it elicited testimony from Schloeman. *Cf. Bunton*, 136 S.W.3d at 367 (stating difficulty ensued when the State elicited new hearsay from the officer unrelated to the hearsay that it was entitled to clarify).

or injurious effect or influence on the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 3−4 (Tex. Crim. App. 2001). If, on the record as a whole, it appears the error "did not influence the jury, or had but a slight effect," we must consider the error harmless and allow the conviction to stand. *Johnson*, 967 S.W.2d at 417. The improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence. *See Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App.), *cert. denied*, 528 U.S. 956, 120 S. Ct. 384 (1999).

The DNA analyst Alexander had previously testified without objection about the test results on the swabs contained in L.V.'s sexual assault kit. Specifically, she testified that Appellant's DNA was found on the chest, vaginal, vulvar, perianal, and anal swabs. She testified that the sperm fraction[5] on the vulvar swabs originated from Appellant. After the testimony of Schloeman on redirect to which Appellant objected, the State again called Alexander as a rebuttal witness and asked her whether she found a third contributor on the

---

[5] Alexander explained that when she suspects semen or sperm present in a sample also containing biological fluids she performs an extraction, which isolates the sample by separating the male fraction and female fraction of the specimen. She refers to the female fraction as the "epithelial fraction" and the male fraction as the "sperm fraction." She later explained that with the vulvar swab, the epithelial fraction was consistent with a mixture of L.V. and Appellant's DNA. The DNA profile found in the sperm fraction was consistent with Appellant's DNA.

vulvar swab.  Alexander replied, without objection that there was no third contributor on that particular swab.  The testimony of Schloeman to which Appellant objected was merely cumulative of the DNA analyst's testimony about the results, properly admitted before and after Schloeman's testimony. *See Brooks*, 990 S.W.2d at 287; *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Matz v. State,* 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) (op. on remand).  Considering all of the evidence admitted, we conclude that Schloeman's admitted testimony was harmless and did not affect a substantial right.

## V.    Conclusion

Based on the State's correction of a false impression and the lack of any cognizable error, we overrule Appellant's sole point and affirm the trial court's judgment.

PER CURIAM

PANEL: GARDNER, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  April 30, 2009

12