Opinion filed June 30,
2011

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00223-CR 

                                                    __________

 

                                THOMAS
LEE BAILEY, Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On
Appeal from the 18th District Court

 

                                                          Johnson
County, Texas

 

                                                    Trial
Court Cause No. F41927 

 



 

                                            M
E M O R A N D U M   O P I N I O N

            The
jury convicted Thomas Lee Bailey of two counts of aggravated sexual assault of
a child (Counts One and Five), four counts of indecency with a child by contact
(Counts Two, Three, Six, and Seven), and two counts of indecency with a child
by exposure (Counts Four and Eight).  The jury assessed punishment at
confinement for life and a $10,000 fine on Counts One and Five, confinement for
twenty years and a $10,000 fine on Counts Two, Three, Six, and Seven, and
confinement for ten years and a $10,000 fine on Counts Four and Eight.  The
trial court sentenced appellant accordingly and ordered (1) that the sentence
for Count Five run consecutively to the sentence for Count One, (2) that the
sentence for Count Two run consecutively to the sentence for Count Five, (3)
that the sentence for Count Three run consecutively to the sentence for Count
Two, and (4) that the sentences for Counts Four, Six, Seven, and Eight run
concurrently with the sentence for Count Three.  We affirm.

Issue
on Appeal

            Appellant
does not challenge the sufficiency of the evidence to support his convictions. 
In his sole point of error, he contends that the trial court erred by admitting
a previously undisclosed version of a video recording of an interview by a
forensic interviewer of the complainant, C.S.  Appellant asserts that the trial
court should not have admitted the video because it was hearsay.

Proceedings
in the Trial Court

            The
record shows that C.S.[1]
was born in October 1990.  B.A. is C.S.’s mother.  B.A., C.S., and C.S.’s two
brothers lived in a house in Joshua, Texas.  B.A. began a relationship with
appellant.  In January 2004, appellant moved in with B.A. and her children.  B.A.
was a registered nurse, and she worked at night.  C.S. testified that, soon
after appellant moved into the house, he began coming into her room at night
after she had gone to bed.  She said that, initially, appellant watched her
while she was in bed.  She described appellant’s conduct as progressively
getting worse.  C.S. said that, about two or three weeks after appellant
started coming into her room, he touched her breasts and her genitals on
multiple occasions.  She also said that, later, on a number of occasions,
appellant penetrated her sexual organ with his fingers and masturbated by her
bedside.  In detailed testimony, C.S. said that appellant repeatedly abused her
over the course of about a year.  C.S. said that, at one point, she told B.A.
about “parts of” the abuse.  C.S. thought that B.A. did not believe her.  B.A.
confronted appellant, and appellant denied that he had abused C.S.  C.S.
testified that the abuse continued after B.A. confronted appellant.

            Appellant
moved out of B.A.’s house in 2005.  C.S. made an outcry of sexual abuse against
him in 2007.  Appellant denied C.S.’s allegations.  After her outcry, C.S. was
examined by Araceli Desmarais, a sexual assault nurse examiner at Cook
Children’s Medical Center.  On May 25, 2007, Karen Tutt, the lead forensic
interviewer with the Children’s Advocacy Center, conducted a forensic interview
of C.S.  The interview was videotaped.

            Appellant’s
counsel viewed a DVD copy of the videotape of the forensic interview before
trial.  During cross-examination of C.S., appellant’s counsel inquired about
specific statements that C.S. made during the forensic interview.  Appellant’s
counsel contrasted those statements with statements that C.S. made at the
hospital or during her direct examination trial testimony.  Thus, appellant’s
counsel sought to establish that C.S.’s statements in the forensic interview were
inconsistent with her trial testimony and statements that she made at the
hospital.  Appellant acknowledges in his appellate brief that his counsel “referred
to the CAC video in an effort to show inconsistencies in [C.S.’s] testimony.”

            Appellant’s
counsel emphasized statements in the forensic interview that, when viewed in
isolation, are favorable to appellant’s contention that C.S. gave inconsistent
statements about the abuse.  For example, appellant’s counsel asked C.S., “Now,
you said in your video interview that all this stuff started as soon as he
moved in[?]”  C.S. answered, “Yeah.”  Appellant’s counsel then asked, “So that
would be according to what you’re telling us in January of 2004; is that
right?”  C.S. responded, “Yes.”  In contrast, appellant’s counsel also elicited
testimony from C.S. that she told people at the hospital that appellant started
abusing her on about February 28, 2004, the date her first menstrual period
began.  Appellant’s counsel also asked C.S. about her statement in the forensic
interview that B.A. learned about the abuse before appellant moved out of the
house.  In contrast, C.S. told Nurse Desmarais that she told B.A. about the
abuse after appellant moved out of the house.  Appellant’s counsel also asked
C.S. about her statement in the forensic interview that she told her brother,
Jason, about the abuse.  At trial, C.S. testified that she did not know whether
Jason knew about the abuse.  Appellant’s counsel also asked C.S. about her
statement in the forensic interview that appellant tried to “rip” off her shirt.
 At trial, C.S. testified that appellant “pulled” off her shirt.  Appellant’s
counsel also used other statements from the forensic interview in an effort to
show that C.S. had given inconsistent statements about the abuse.

            At
the conclusion of C.S.’s testimony, the State sought to introduce the
videotaped forensic interview of C.S. in its entirety.  A hearing was held
outside the presence of the jury.  The prosecutor argued that, because
appellant’s counsel had “specifically introduced certain portions” of the
forensic interview during cross-examination of C.S., appellant’s counsel had
“opened the door” to admission of the videotape under the rule of optional
completeness.  See Tex. R. Evid.
107.  The prosecutor informed the trial court that she had received the
original videotape of the forensic interview from the police department the
Thursday before trial. Appellant’s attorney objected to the admission of the
videotape on the grounds that it was hearsay and that the original videotape
had not been disclosed to her.  She said that the DVD copy of the videotape
that she had viewed before trial had “horrific sound” and that she could not
hear “half of the interview.”  The prosecutor stated that the original
videotape had better sound quality than the copy but disputed the statements by
appellant’s counsel about the quality of the sound on the copy.  The prosecutor
asserted that appellant’s counsel had “heard enough” from listening to the DVD
copy of the video to know what was said in the interview and to cross-examine
C.S. as to specific statements that she had made during the interview.

            The
trial court determined that the entire videotape of the forensic interview was
admissible under the rule of optional completeness.  However, the trial court
was concerned with the lack of notice of the original videotape to appellant’s
counsel.  Therefore, the trial court adjourned the trial for the remainder of
the day to allow appellant’s counsel to view the videotape.  The trial court
indicated that it would consider a request by appellant’s counsel for
additional time if she needed more time to prepare after viewing the
videotape.  The trial court then stated the following:

 So
I’m anticipating, if the State offers it, we’ll show it, unless there’s a
really good reason why we shouldn’t show it tomorrow because of a time
limitation.  If you need time, that would be the point to ask me.

 

The trial
resumed the following morning.  Appellant’s counsel stated that she would renew
her objection to the admission of the videotape when the State sought to
introduce it into evidence.

            The
State called Tutt as a witness.  During her testimony, the State offered the
videotape as State’s Exhibit 1.  Appellant’s counsel renewed the “prior
objections that were made by the Defense outside the presence of the jury
regarding hearsay and notice.”  The trial court overruled the objections and
admitted the videotape.  The videotape was played for the jury.  The sound was
muted during two parts of the videotape because those parts contain references
to extraneous offenses.

Analysis

            We
review a trial court’s decision to admit evidence under an abuse of discretion
standard.  Cameron v. State, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); Apolinar
v. State, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).  A trial court abuses
its discretion only when its admissibility decision lies outside the zone of
reasonable disagreement.  Apolinar, 155 S.W.3d at 186.

            Appellant
objected to the admissibility of the videotape on the ground of lack of notice.
 The record shows that the State provided appellant’s counsel with a DVD copy of
the videotape before trial, that appellant’s counsel viewed the copy, and that –
based on that review – appellant’s counsel cross-examined C.S. about several
specific statements that she had made during the forensic interview.  The
prosecutor disputed appellant’s counsel’s claim as to the quality of the sound
on the copy.  Appellant’s counsel did not include the DVD copy of the videotape
in the trial record; therefore, we cannot compare it with the original
videotape.  The trial court adjourned the trial to allow appellant’s counsel
the opportunity to review the original videotape and indicated that it would
consider granting a request for additional time if appellant’s counsel needed
it.  When trial resumed the next morning, appellant did not request additional
time or make any statements comparing the DVD copy of the videotape with the
original of the videotape.  Based on these facts, we cannot conclude that the
trial court abused its discretion in overruling appellant’s objection based on
a lack of notice.

            Appellant
also objected to admissibility of the videotape on the ground that it was
hearsay.  The trial court concluded that the videotape was admissible under the
rule of optional completeness.  The rule of optional completeness, which is set
forth in Rule 107 of the Rules of Evidence, is a recognized exception to the
hearsay rule.  Walters v. State, 247 S.W.3d 204, 217 (Tex. Crim. App.
2007); Mick v. State, 256 S.W.3d 828, 831 (Tex. App.—Texarkana 2008, no
pet.).  Rule 107 provides:

When
part of an act, declaration, conversation, writing or recorded statement is
given in evidence by one party, the whole on the same subject may be inquired
into by the other, and any other act, declaration, writing or recorded
statement which is necessary to make it fully understood or to explain the same
may also be given in evidence, as when a letter is read, all letters on the
same subject between the same parties may be given.

 

The rule of
optional completeness is one of admissibility and permits the introduction of
otherwise inadmissible evidence when that evidence is necessary to fully and
fairly explain a matter “opened up” by the adverse party.  Walters, 247
S.W.3d at 217-18; Credille v. State, 925 S.W.2d 112, 116 (Tex. App.—Houston
[14th Dist.] 1996, pet. ref’d).  The purpose of the rule is to reduce the
possibility of the jury receiving a false impression from hearing only a part
of some act, conversation, or writing.  Walters, 247 S.W.3d at 218; Tovar
v. State, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no
pet.).

            Generally,
when a portion of a videotaped interview is inquired into by the defense, the
State is entitled to introduce any other evidence that is necessary to make the
conversation fully understood.  Mick, 256 S.W.3d at 831; Credille,
925 S.W.2d at 117.  More precisely, Rule 107 allows the admission of a
complainant’s videotaped statement when (1) the defense attorney asks questions
concerning some of the complainant’s statements on the videotape; (2) the
defense attorney’s questions leave the possibility of the jury receiving a
false impression from hearing only a part of the conversation, with statements
taken out of context; and (3) the videotape is necessary for the conversation
to be fully understood.  Mick, 256 S.W.3d at 831; Credille, 925
S.W.2d at 116-17.

            During
cross-examination of C.S., appellant’s counsel sought to establish that C.S. had
given numerous inconsistent and conflicting statements about the abuse and
that, therefore, she was not a credible witness.  Appellant’s counsel asked C.S.
questions about specific statements that she made during the forensic
interview.  Viewed out of context, those statements appear to be inconsistent
with statements that C.S. made at the hospital or during her trial testimony.

            We
have reviewed the videotape of the forensic interview.  Viewed in its entirety,
the videotape is consistent with C.S.’s trial testimony in material respects.  However,
the questions by appellant’s counsel left open the possibility that, by hearing
only part of the conversation, the jury would receive the false impression that
C.S. had given numerous inconsistent and conflicting statements about the
sexual abuse.  For example, appellant’s counsel emphasized that, while C.S.
said in the forensic interview that “all this stuff started” as soon as
appellant moved into the house in January 2004, C.S. told the people at the
hospital that the abuse started around February 28, 2004.  In other parts of
the forensic interview, C.S. explained that, during the first weekend in
January 2004, appellant started coming into her room and staring at her.  Similar
to her trial testimony, C.S. then said in the forensic interview that
appellant’s conduct progressively became worse – from staring at her to
touching her to penetrating her sexual organ with his finger while masturbating
at her bedside.  Thus, when viewed in proper context, a statement that “all
this stuff started” in January 2004 is not inconsistent with C.S.’s statement
at the hospital that the abuse started around February 28, 2004.  As another
example, appellant emphasized C.S.’s statement in the forensic interview that
appellant tried to “rip” off her shirt.  Soon after this statement, C.S.
explained in the forensic interview that appellant would “take” off her shirt. 
When viewed in the proper context, C.S.’s statements in the forensic interview
are not inconsistent with C.S.’s trial testimony that appellant “pulled” off
her shirt.  Because appellant’s counsel’s cross-examination of C.S. about her
specific statements in the forensic interview created the possibility for
confusion and false impressions had the jury not been permitted to see and hear
the conversation in context, the trial court did not abuse its discretion by
admitting the videotape.  Appellant’s sole point of error is overruled.

This
Court’s Ruling

            The judgments of the
trial court are affirmed.[2]

 

 

                                                                                                TERRY
McCALL

                                                                                                JUSTICE

 

June 30, 2011

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel[3]
consists of:  Wright, C.J.,

McCall, J., and Hill, J.[4]









[1]To protect the identity of the complainant, we use
initials to refer to her and her mother. 





[2]The trial court entered a judgment that includes Counts
One and Five; a judgment that includes Counts Two, Three, Six, and Seven; and a
judgment that includes Counts Four and Eight.

 





[3]Rick Strange, Justice, resigned effective April 17,
2011.  The justice position is vacant pending
appointment of a successor by the governor.





[4]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth, sitting by assignment.