**Opinion filed June 30, 2011**



## In The

# Eleventh Court of Appeals

_____

## No. 11-09-00223-CR

_____

## THOMAS LEE BAILEY, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 18th District Court**

**Johnson County, Texas**

**Trial Court Cause No. F41927**

## M E M O R A N D U M   O P I N I O N

The jury convicted Thomas Lee Bailey of two counts of aggravated sexual assault of a child (Counts One and Five), four counts of indecency with a child by contact (Counts Two, Three, Six, and Seven), and two counts of indecency with a child by exposure (Counts Four and Eight). The jury assessed punishment at confinement for life and a $10,000 fine on Counts One and Five, confinement for twenty years and a $10,000 fine on Counts Two, Three, Six, and Seven, and confinement for ten years and a $10,000 fine on Counts Four and Eight. The trial court sentenced appellant accordingly and ordered (1) that the sentence for Count Five run

consecutively to the sentence for Count One, (2) that the sentence for Count Two run consecutively to the sentence for Count Five, (3) that the sentence for Count Three run consecutively to the sentence for Count Two, and (4) that the sentences for Counts Four, Six, Seven, and Eight run concurrently with the sentence for Count Three. We affirm.

*Issue on Appeal*

Appellant does not challenge the sufficiency of the evidence to support his convictions. In his sole point of error, he contends that the trial court erred by admitting a previously undisclosed version of a video recording of an interview by a forensic interviewer of the complainant, C.S. Appellant asserts that the trial court should not have admitted the video because it was hearsay.

*Proceedings in the Trial Court*

The record shows that C.S.[1] was born in October 1990. B.A. is C.S.'s mother. B.A., C.S., and C.S.'s two brothers lived in a house in Joshua, Texas. B.A. began a relationship with appellant. In January 2004, appellant moved in with B.A. and her children. B.A. was a registered nurse, and she worked at night. C.S. testified that, soon after appellant moved into the house, he began coming into her room at night after she had gone to bed. She said that, initially, appellant watched her while she was in bed. She described appellant's conduct as progressively getting worse. C.S. said that, about two or three weeks after appellant started coming into her room, he touched her breasts and her genitals on multiple occasions. She also said that, later, on a number of occasions, appellant penetrated her sexual organ with his fingers and masturbated by her bedside. In detailed testimony, C.S. said that appellant repeatedly abused her over the course of about a year. C.S. said that, at one point, she told B.A. about "parts of" the abuse. C.S. thought that B.A. did not believe her. B.A. confronted appellant, and appellant denied that he had abused C.S. C.S. testified that the abuse continued after B.A. confronted appellant.

Appellant moved out of B.A.'s house in 2005. C.S. made an outcry of sexual abuse against him in 2007. Appellant denied C.S.'s allegations. After her outcry, C.S. was examined by Araceli Desmarais, a sexual assault nurse examiner at Cook Children's Medical Center. On May 25, 2007, Karen Tutt, the lead forensic interviewer with the Children's Advocacy Center, conducted a forensic interview of C.S. The interview was videotaped.

---

[1] To protect the identity of the complainant, we use initials to refer to her and her mother.

Appellant's counsel viewed a DVD copy of the videotape of the forensic interview before trial. During cross-examination of C.S., appellant's counsel inquired about specific statements that C.S. made during the forensic interview. Appellant's counsel contrasted those statements with statements that C.S. made at the hospital or during her direct examination trial testimony. Thus, appellant's counsel sought to establish that C.S.'s statements in the forensic interview were inconsistent with her trial testimony and statements that she made at the hospital. Appellant acknowledges in his appellate brief that his counsel "referred to the CAC video in an effort to show inconsistencies in [C.S.'s] testimony."

Appellant's counsel emphasized statements in the forensic interview that, when viewed in isolation, are favorable to appellant's contention that C.S. gave inconsistent statements about the abuse. For example, appellant's counsel asked C.S., "Now, you said in your video interview that all this stuff started as soon as he moved in[?]" C.S. answered, "Yeah." Appellant's counsel then asked, "So that would be according to what you're telling us in January of 2004; is that right?" C.S. responded, "Yes." In contrast, appellant's counsel also elicited testimony from C.S. that she told people at the hospital that appellant started abusing her on about February 28, 2004, the date her first menstrual period began. Appellant's counsel also asked C.S. about her statement in the forensic interview that B.A. learned about the abuse before appellant moved out of the house. In contrast, C.S. told Nurse Desmarais that she told B.A. about the abuse after appellant moved out of the house. Appellant's counsel also asked C.S. about her statement in the forensic interview that she told her brother, Jason, about the abuse. At trial, C.S. testified that she did not know whether Jason knew about the abuse. Appellant's counsel also asked C.S. about her statement in the forensic interview that appellant tried to "rip" off her shirt. At trial, C.S. testified that appellant "pulled" off her shirt. Appellant's counsel also used other statements from the forensic interview in an effort to show that C.S. had given inconsistent statements about the abuse.

At the conclusion of C.S.'s testimony, the State sought to introduce the videotaped forensic interview of C.S. in its entirety. A hearing was held outside the presence of the jury. The prosecutor argued that, because appellant's counsel had "specifically introduced certain portions" of the forensic interview during cross-examination of C.S., appellant's counsel had "opened the door" to admission of the videotape under the rule of optional completeness. *See* TEX. R. EVID. 107. The prosecutor informed the trial court that she had received the original

3

videotape of the forensic interview from the police department the Thursday before trial. Appellant's attorney objected to the admission of the videotape on the grounds that it was hearsay and that the original videotape had not been disclosed to her. She said that the DVD copy of the videotape that she had viewed before trial had "horrific sound" and that she could not hear "half of the interview." The prosecutor stated that the original videotape had better sound quality than the copy but disputed the statements by appellant's counsel about the quality of the sound on the copy. The prosecutor asserted that appellant's counsel had "heard enough" from listening to the DVD copy of the video to know what was said in the interview and to cross-examine C.S. as to specific statements that she had made during the interview.

The trial court determined that the entire videotape of the forensic interview was admissible under the rule of optional completeness. However, the trial court was concerned with the lack of notice of the original videotape to appellant's counsel. Therefore, the trial court adjourned the trial for the remainder of the day to allow appellant's counsel to view the videotape. The trial court indicated that it would consider a request by appellant's counsel for additional time if she needed more time to prepare after viewing the videotape. The trial court then stated the following:

> So I'm anticipating, if the State offers it, we'll show it, unless there's a really good reason why we shouldn't show it tomorrow because of a time limitation. If you need time, that would be the point to ask me.

The trial resumed the following morning. Appellant's counsel stated that she would renew her objection to the admission of the videotape when the State sought to introduce it into evidence.

The State called Tutt as a witness. During her testimony, the State offered the videotape as State's Exhibit 1. Appellant's counsel renewed the "prior objections that were made by the Defense outside the presence of the jury regarding hearsay and notice." The trial court overruled the objections and admitted the videotape. The videotape was played for the jury. The sound was muted during two parts of the videotape because those parts contain references to extraneous offenses.

*Analysis*

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim. App. 2007); *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A trial court abuses its discretion only when its

admissibility decision lies outside the zone of reasonable disagreement. *Apolinar*, 155 S.W.3d at 186.

Appellant objected to the admissibility of the videotape on the ground of lack of notice. The record shows that the State provided appellant's counsel with a DVD copy of the videotape before trial, that appellant's counsel viewed the copy, and that – based on that review – appellant's counsel cross-examined C.S. about several specific statements that she had made during the forensic interview. The prosecutor disputed appellant's counsel's claim as to the quality of the sound on the copy. Appellant's counsel did not include the DVD copy of the videotape in the trial record; therefore, we cannot compare it with the original videotape. The trial court adjourned the trial to allow appellant's counsel the opportunity to review the original videotape and indicated that it would consider granting a request for additional time if appellant's counsel needed it. When trial resumed the next morning, appellant did not request additional time or make any statements comparing the DVD copy of the videotape with the original of the videotape. Based on these facts, we cannot conclude that the trial court abused its discretion in overruling appellant's objection based on a lack of notice.

Appellant also objected to admissibility of the videotape on the ground that it was hearsay. The trial court concluded that the videotape was admissible under the rule of optional completeness. The rule of optional completeness, which is set forth in Rule 107 of the Rules of Evidence, is a recognized exception to the hearsay rule. *Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007); *Mick v. State*, 256 S.W.3d 828, 831 (Tex. App.—Texarkana 2008, no pet.). Rule 107 provides:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

The rule of optional completeness is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Walters*, 247 S.W.3d at 217-18; *Credille v. State*, 925 S.W.2d 112, 116 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). The purpose of the rule is to reduce the possibility of the jury receiving a false impression from hearing only a part of some

act, conversation, or writing. *Walters*, 247 S.W.3d at 218; *Tovar v. State*, 221 S.W.3d 185, 190 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Generally, when a portion of a videotaped interview is inquired into by the defense, the State is entitled to introduce any other evidence that is necessary to make the conversation fully understood. *Mick*, 256 S.W.3d at 831; *Credille*, 925 S.W.2d at 117. More precisely, Rule 107 allows the admission of a complainant's videotaped statement when (1) the defense attorney asks questions concerning some of the complainant's statements on the videotape; (2) the defense attorney's questions leave the possibility of the jury receiving a false impression from hearing only a part of the conversation, with statements taken out of context; and (3) the videotape is necessary for the conversation to be fully understood. *Mick*, 256 S.W.3d at 831; *Credille*, 925 S.W.2d at 116-17.

During cross-examination of C.S., appellant's counsel sought to establish that C.S. had given numerous inconsistent and conflicting statements about the abuse and that, therefore, she was not a credible witness. Appellant's counsel asked C.S. questions about specific statements that she made during the forensic interview. Viewed out of context, those statements appear to be inconsistent with statements that C.S. made at the hospital or during her trial testimony.

We have reviewed the videotape of the forensic interview. Viewed in its entirety, the videotape is consistent with C.S.'s trial testimony in material respects. However, the questions by appellant's counsel left open the possibility that, by hearing only part of the conversation, the jury would receive the false impression that C.S. had given numerous inconsistent and conflicting statements about the sexual abuse. For example, appellant's counsel emphasized that, while C.S. said in the forensic interview that "all this stuff started" as soon as appellant moved into the house in January 2004, C.S. told the people at the hospital that the abuse started around February 28, 2004. In other parts of the forensic interview, C.S. explained that, during the first weekend in January 2004, appellant started coming into her room and staring at her. Similar to her trial testimony, C.S. then said in the forensic interview that appellant's conduct progressively became worse – from staring at her to touching her to penetrating her sexual organ with his finger while masturbating at her bedside. Thus, when viewed in proper context, a statement that "all this stuff started" in January 2004 is not inconsistent with C.S.'s statement at the hospital that the abuse started around February 28, 2004. As another example, appellant emphasized C.S.'s statement in the forensic interview that appellant tried to "rip" off her shirt.

Soon after this statement, C.S. explained in the forensic interview that appellant would "take" off her shirt. When viewed in the proper context, C.S.'s statements in the forensic interview are not inconsistent with C.S.'s trial testimony that appellant "pulled" off her shirt. Because appellant's counsel's cross-examination of C.S. about her specific statements in the forensic interview created the possibility for confusion and false impressions had the jury not been permitted to see and hear the conversation in context, the trial court did not abuse its discretion by admitting the videotape. Appellant's sole point of error is overruled.

*This Court's Ruling*

The judgments of the trial court are affirmed.[2]

TERRY McCALL

JUSTICE

June 30, 2011

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel[3] consists of: Wright, C.J.,
McCall, J., and Hill, J.[4]

---

[2]The trial court entered a judgment that includes Counts One and Five; a judgment that includes Counts Two, Three, Six, and Seven; and a judgment that includes Counts Four and Eight.

[3]Rick Strange, Justice, resigned effective April 17, 2011. The justice position is vacant pending appointment of a successor by the governor.

[4]John G. Hill, Former Justice, Court of Appeals, 2nd District of Texas at Fort Worth, sitting by assignment.